[No. 18765.   Department One.   December 30, 1924.]

THE STATE OF WASHINGTON, *Respondent*, v.
VICTOR ANDERSON, *Appellant*.[1]

CRIMINAL LAW (227)—TRIAL—ORDER OF PROOF.  It is discretionary to admit evidence of admissions prior to proof of the *corpus delicti*.

HOMICIDE (75)—EVIDENCE—SUFFICIENCY—CORPUS DELICTI.  In a prosecution for murder, the *corpus delicti* is sufficiently proved by evidence of the finding of the body floating in a bay, with wounds on the head, and by evidence of witnesses identifying it as the body of the deceased.

CRIMINAL LAW (149)—EVIDENCE—OPINION EVIDENCE—CONCLUSION OF WITNESS.  Error cannot be assigned in that an answer was an expression of the opinion that deceased was killed in a house, where it was merely responsive to a question as to what the witness had said at a certain time.

SAME (197)—TRIAL—INDORSEMENT OF WITNESSES—DISCRETION.  In the absence of surprise or a request for a continuance, it is discretionary to allow the indorsement of additional witnesses on the information.

SAME (226)—TRIAL—ELECTION.  Rem. Comp. Stat., § 2057, requiring that the information be direct and certain as regards the particular circumstances of the crime charged, does not require that the state elect as to the exact location where a murder was committed.

HOMICIDE (79)—EVIDENCE — SUFFICIENCY — CIRCUMSTANTIAL EVIDENCE.  A conviction of murder of the accused's brother is sustained by evidence of accused's knowledge of the death and the concealment and condition of the body, opportunity, motive, and possession of deceased's effects, and many impossible and conflicting statements showing the falsity of his story.

SAME (132)—APPEAL—HARMLESS ERROR—INSTRUCTIONS.  Upon a conviction of murder, the giving of an instruction upon the question of justifiable homicide is without prejudice to the accused.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered October 15, 1923, upon a trial and conviction of murder. Affirmed.

[1]Reported in 231 Pac. 456.

*C. J. Henderson* and *Ben Driftmier,* for appellant.
*Warren J. Gilbert, Walter H., Hodge,* and *W. L. Brickey,* for respondent.

PEMBERTON, J.—Appellant was found guilty by the verdict of a jury of the crime of murder in the first degree. From the judgment and sentence, this appeal is taken.

The information charged that the appellant, on or about the 29th day of November, 1920, "did murder and kill one Enoch Anderson, his brother, by striking and beating said Enoch Anderson on, over and against the face and head with a certain blunt weapon or instrument, to the prosecuting attorney unknown."

The appellant's first assignment of error is that "the court erred in admitting testimony as to appellant's conversations prior to proof of *corpus delicti,*" relying on the case of *State v. Marselle,* 43 Wash. 273, 86 Pac. 586, wherein the court said:

"But he contends that, when the confessions have been admitted and there has been no other prior or subsequent proof of the *corpus delicti,* the admission of such testimony constitutes prejudicial and reversible error. We think this contention must be sustained. A confession not corroborated by independent evidence of the *corpus delicti* is not sufficient to support a conviction of crime."

In order to determine this question it is necessary to refer to the proof offered on the part of the state.

The coroner was the first witness called by the state. He testified to the finding of the body floating in the bay near Marshes Point, not far from Anacortes. The body was wrapped in a blanket, with a dunnage bag tied to it containing a few rocks. The flesh remained intact on the face and hands. There was a wound on the forehead and on the right cheek. The blanket and

the dunnage bag were identified as the property of appellant. The coroner answered the following question: "Q. Do you know whose body that was? A. Enoch Anderson's."

The body was further identified by laundry marks on the underwear as that of Enoch Anderson. A number of other witnesses testified that the body was that of Enoch Anderson.

"It is only necessary to say that the order of proof rests in the sound discretion of the trial court."

See *State v. Gohl*, 46 Wash. 408, 90 Pac. 259; *State v. Druxinman*, 34 Wash. 257, 75 Pac. 814; *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989; *State v. Marselle, supra.*

The *corpus delicti* was, in our judgment, sufficiently proven.

It is next contended that the court committed error in permitting J. R. Peterson to testify as follows: "Under the circumstances that he was found it would take a great deal of evidence to convince me that he was not killed in the house," upon the ground and for the reason that the same is an expression of the opinion of the witness and the court committed error in refusing to strike this answer from the record. The witness was first asked if he remembered a conversation down in the pool hall, to which he answered, "Yes." Then he was asked the conversation. His answer was as follows:

"Why, Victor came in. Cap. Matheson and I was sitting talking in one end of the hall by ourselves. He came up, spoke to us and Cap. Matheson said 'You found your poor brother.' Victor said 'Yes' and I said under the circumstances, the way he was found it would take a great deal of evidence to convince me he was not killed in the house. Q. What did Victor say in response to that? A. He did not say anything.

Q. What did he do? A. He sat there, and his countenance looked as though he felt bad.''

Counsel for appellant then stated: ''We move that the last answer be stricken. It is not responsive to the question. The Court: The motion denied.'' The answer certainly was responsive to the question and the motion to strike properly denied.

It is claimed that the court erred in permitting certain witnesses to testify for the state whose names had not been endorsed upon the information prior to the trial. It appears that, ten days before the trial, motion was served on the attorney for appellant for an order permitting the endorsement of additional names on the information. Eight days before the trial the deputy county attorney, in the presence of the attorney for appellant, wrote three additional names on the copy of the motion that had been served two days prior thereto, and the deputy county attorney stated to the trial court on that date that he had written those names in upon the copy served upon the attorney for the appellant and filled the three additional names in on the proposed order. At the suggestion of the court, the words ''Exception of defendant is hereby allowed'' were written on the proposed order, which was signed by the court. The names, however, were not endorsed upon the information until the time of the trial.

It is claimed now that appellant had no knowledge of the fact that these witnesses would be called and could not anticipate their testimony. The trial court held that they had notice that these names were going to be placed upon the information and permitted the witnesses to testify. There was no request for continuance on the ground of surprise, and the allowance of additional names upon the information, especially

after notice has been given, as in this case, is largely discretionary with the trial court, and no prejudice being shown, its discretion will be presumed to have been properly exercised. *State v. Bokien,* 14 Wash. 403, 44 Pac. 889; *State v. Miller,* 80 Wash. 75, 141 Pac. 293; *State v. Quinn,* 56 Wash. 295, 105 Pac. 818; *State v. Carpenter,* 56 Wash. 670, 106 Pac. 206.

The appellant contends that the court committed error in denying the motion to require the state to elect and designate the place where the crime was committed, and claims that § 2057, Rem. Comp. Stat. [P. C. § 9270], providing that the "  .  .  .  information must be direct and certain, as it regards  .  .  . the particular circumstances of the crime charged,  .  .  . " requires that the state elect the exact location where the act was committed. Whether the crime was committed at the house or at the boat, or at some other particular place near Anacortes, is not material. The motion was properly denied.

The appellant insists that the court erred in denying his motion for nonsuit and challenging the sufficiency of the evidence. It is contended that the state has failed to identify the body and thereby has failed to prove the death of Enoch Anderson, or that he met death by foul means, or that appellant was in any way connected with his death.

On January 25, the body of Enoch Anderson was found floating in the bay near Anacortes, wrapped in a blanket, and attached thereto a dunnage bag filled with rocks, the body dressed in underclothing, with its head showing that the deceased had been assaulted with a blunt weapon while he was lying down. The blanket and the dunnage bag were the property of appellant. The deceased left two watches — one an every day watch he carried with him when he was at

work, and the other a gold watch he carried on other occasions. Both watches were found in the safe deposit box of appellant after his arrest. A number of conflicting statements were made with reference to these watches by appellant. Appellant was in love with a Miss Shulte and had stated that he desired to marry Miss Shulte, but would not marry until out of debt. Soon after his brother's disappearance, Miss Shulte and her mother moved into Enoch's home, occupying it with appellant.

The deceased was last seen before his death by Charles Fleming, police chief, about midnight on November 28. He met Enoch coming out of a pool hall and saw him go north on Commercial avenue toward his residence. He was dressed in a good suit of clothes. A few minutes thereafter appellant was seen in his automobile, driving toward his home. Enoch stated when in the pool room that he was going home and change his clothes and then going aboard his boat at five in the morning. Appellant was returning home from a visit with his fiancee, Miss Shulte, in Mount Vernon, and had left there about eleven o'clock that evening, arriving home about midnight. The next morning at about seven o'clock, the appellant called upon Mr. Fleming, chief of police, and told him that his brother had been killed and thrown in the bay. He requested grappling hooks and asked Fleming to assist him in trying to find his brother. Going with appellant to the boat of his brother they found it locked, and appellant stated that his brother had not gone onto the boat. Later that morning he talked with one R. J. Peterson and asked whether he had seen his brother and told him that Enoch had disappeared, that he had come home about twelve o'clock, wrapped up his blankets and had gone to his boat.

At the time the body was recovered, the appellant said that it was his brother. A ring found upon the body was identified as the property of Enoch Anderson, and at the request of appellant was given to him.

Dr. S. G. Brooks testified that the fracture and depression of the skull and the fracture of the molar bone indicated that these wounds were of such a character to cause the death of the deceased, and from the location of the wound the man was lying down when struck a severe blow with something similar to an iron bar.

Before the discovery of the body of Enoch Anderson, appellant told a number of witnesses that he had gone to a clairvoyant in Seattle and had been informed that his brother was in the bottom of the sea, lying on his back, wrapped in a blanket. He said that the medium told him what he knew already, and that was that the body was in deep water, anchored. He told another that the clairvoyant had stated that his brother had been murdered, tied up in a bundle and sunk down with rocks. He also told that a spiritualist had informed him that his brother's head was smashed, that he was in one hundred feet of water with his clothes off, wrapped in a blanket, and rocks tied to the neck. On January 25, the body was found floating in the bay, wrapped, and in the exact condition already described by appellant, and he was unable to give the name of the clairvoyant or spiritualist that had informed him of these facts.

We are satisfied that there is evidence to support the theory of the state, stated in the brief of respondent as follows:

"The theory of the state was that decedent and Enoch had arrived home at about the same time, and may have quarrelled; that prompted by his desire to marry, and in order to obtain Enoch's property for

this purpose and to pay his debts, Victor killed Enoch in his bed at the house with a bar or blunt instrument, wrapped up the body in the blanket and dunnage bag, and under cover of night sunk it in the bay; that his confused efforts to assist in finding the body were to relieve himself from suspicion, and that when he had unwarily said too much to Mr. Fleming he corrected his statements to others; that the crime preyed upon his mind and caused him to talk much; and that the fortune teller stories, which were false, were told by him to show his pretended sympathetic interest in locating the body and without thought that the body would be found.

"Without argument in detail, we deem it sufficient to say that this theory is borne out in every particular by the evidence as above related—the circumstances of their actions that night, the immediate knowledge of appellant that his brother was killed, his accurate knowledge of the condition of the body, his need of money and property, his prompt recovery of decedent's property and the moving in of the Shultes, his possession of the watches and his many conflicting and convicting statements concerning them, his directing the search for the body about the docks and boat where he knew it was not, the ownership of the blankets and bag, the fact that the body was dressed in underclothing as bachelor fishermen are wont to sleep, that decedent was killed while lying down, and his many impossible and conflicting statements and declarations, showing the falsehood of his own story and of his position."

The appellant contends that the court erred in refusing to give requested instructions 1, 2, 3, 4, 5, 6, 7, 8 and 9 on the question of sufficiency of circumstantial evidence. We are satisfied that the instructions given by the trial court fully state the law, and there was no error in the refusal to give the requested instructions.

It is claimed that the court erred in giving instruction number 7 on the question of justifiable homicide, on the ground that there is no evidence of any char-

acter in this case that would require such instruction. While there is no fact to support the instruction, the instruction states the law, and the giving of the same was not prejudicial to the rights of the appellant and cannot be considered reversible error.

The judgment is affirmed.

MAIN, C. J., PARKER, BRIDGES, and TOLMAN, JJ., concur.