[No. 34131. Department One. March 6, 1958.]

THE STATE OF WASHINGTON, *Appellant*, v. DICK REYNOLDS, *Defendant*, BERTHA W. REYNOLDS, *Respondent*.[1]

[1]Reported in 322 P. (2d) 356.

*Charles O. Carroll, Lawrence K. McDonell,* and *Anthony Savage, Jr.,* for appellant.

*R. M. Burgunder,* for respondent.

OTT, J.—Bertha W. Reynolds and Dick Reynolds, husband and wife, were secretary-treasurer and president, respectively, of the Federal Security Company (hereinafter called the company), a corporation engaged generally in the buying and selling of real-estate mortgages and contracts for investors and borrowers, who answered published advertisements concerning the company's services. Concurrently therewith, they operated the Dick Reynolds Insurance Agency (hereinafter referred to as the agency).

The company maintained two trust accounts, one for the investors' payments and one for payments on contracts made by borrowers. A third account was maintained in connection with the agency. Mr. and Mrs. Reynolds were each authorized to draw from these accounts. Mrs. Reynolds performed duties in connection with both the company and the agency, consisting of the following: She called upon prospective customers at their homes, talked with clients in the office, signed checks, prepared papers for mortgages, made bank deposits, withdrew funds from the trust accounts, received payments from borrowers, aided in the preparation of tax returns, directed the employees in posting receipts and disbursements in the ledgers, issued receipts for funds received from investors and borrowers, answered calls at the switchboard, worked on the books, and operated the office in the absence of Dick Reynolds.

In August, 1955, Armand J. Ravetti discussed with Dick and Bertha Reynolds the possibility of making an investment through the company. September 15, 1955, Mr. Ravetti delivered to the company a check in the sum of $9,928.77 to purchase a real-estate contract and two notes, each secured by a separate mortgage. At the time of the delivery of the check, Mr. Ravetti was given three company receipts, totaling the full amount of the check, for the three specified purchases. The Ravetti payment was entered in the company ledger. September 19, 1955, Dick Reynolds cashed the Ravetti check. The company delivered only the assignment of the real-estate contract to Ravetti, representing $2,928.77 of $9,928.77 which Ravetti had paid to the company. About December 2, 1955, Dick Reynolds absconded, and has not since been apprehended.

August 24, 1956, Dick and Bertha Reynolds were charged, by information, with four counts of grand larceny by embezzlement and one count of grand larceny by false representations. Upon arraignment, Bertha Reynolds entered a plea of not guilty. The cause was tried to a jury, and, at the close of the state's case, the defendant challenged the sufficiency of the state's evidence as to all counts of the information. The court sustained the challenges except as to count IV, relating to alleged embezzlement in the Ravetti transaction. The only evidence offered by Bertha Reynolds consisted of character testimony.

The jury returned a verdict of guilty. The court sustained the defendant's motion for an order in arrest of judgment, upon the ground that the state had "failed to prove beyond a reasonable doubt essential elements of the crimes charged," and that

". . . the facts and circumstances relied upon by the plaintiff [state] to establish the guilt of Bertha W. Reynolds were not inconsistent with any reasonable theory of innocence and did not exclude any reasonable hypothesis other than that of guilt, and that at most said defendant was only an accessory after the fact."

The state has appealed, assigning as error the court's order arresting the judgment.

■ A motion in arrest of judgment raises the question of the sufficiency of the evidence to take the case to the jury. Rule of Pleading, Practice and Procedure 12(3), 34A Wn. (2d) 76. *State v. Knizek,* 192 Wash. 351, 73 P. (2d) 731 (1937); *State v. Burnett,* 157 Wash. 288, 288 Pac. 918 (1930).

Was the evidence sufficient to carry the case to the jury?

■ In *State v. Lutes,* 38 Wn. (2d) 475, 481, 230 P. (2d) 786 (1951), we reaffirmed the rule announced in *State v. McDaniels,* 30 Wn. (2d) 76, 190 P. (2d) 705 (1948), as follows:

" 'A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party. *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223, and cases therein cited.' "

See, also, *Traverso v. Pupo, ante* p. 149, 316 P. (2d) 462 (1957), and *Fink v. Dixon,* 46 Wn. (2d) 794, 285 P. (2d) 557 (1955).

The conduct of Mrs. Reynolds with reference to the Ravetti transaction, which was established by undisputed evidence, was as follows: She was present and knew of the Ravetti transaction, and knew that the money had been received and the amount credited on the company books. On two occasions, she promised Mrs. Ravetti that the papers would be ready shortly. She wrote to Mr. Ravetti that the papers were being held up because of title insurance problems. When Mr. Ravetti called at the company's office in November, Bertha Reynolds told him that the papers would be put in the bank the next morning. She asked the bookkeeper to rewrite the ledger page in the company books and to omit the Ravetti payment. When the bookkeeper refused to change the records, Mrs. Reynolds made the change herself.

■ Further, an attorney testified that, while he was in-

vestigating money shortages in another transaction, Bertha Reynolds stated, on December 10, 1955, that she and her husband had spent the money in an Alaskan venture called the Arctic Freightways. When asked by the attorney if trust funds were also used, she answered in the affirmative. This evidence was admissible for the purpose of showing motive, intent, or a common scheme or plan. *State v. Tembruell,* 50 Wn. (2d) 456, 312 P. (2d) 809 (1957), and cases cited.

■ Whether the evidence is sufficient to submit the issue to the jury is a question of law for the court, and no element of discretion is involved. *Kemalyan v. Henderson,* 45 Wn. (2d) 693, 697, 277 P. (2d) 372 (1954). See, also, *State v. McMurray,* 47 Wn. (2d) 128, 132, 286 P. (2d) 684 (1955). Where there is any evidence, however slight, and the evidence is conflicting or is such that reasonable minds may draw different conclusions therefrom, the question is for the jury. 23 C. J. S. 651, § 1139. *State v. Cranmer,* 30 Wn. (2d) 576, 585, 192 P. (2d) 331 (1948).

■ The court, in ruling that the state had failed to prove beyond a reasonable doubt essential elements of the crime charged, weighed the evidence and thus invaded the province of the jury. The uncontradicted testimony was that Bertha Reynolds falsified the company records with reference to the Ravetti payment, and admitted that she and her husband spent trust money trying to save the Arctic Freightways.

It was the sole province of the jury to believe or disbelieve this testimony, and to draw its conclusions therefrom. The information charged respondent as a principal. Under proper instructions, the jury found the respondent guilty of embezzlement as charged. Our review of the record convinces us that there was sufficient evidence to sustain the verdict of the jury.

The order of the trial court is reversed, and the cause remanded with instructions to enter judgment and sentence in accordance with the verdict of the jury.

HILL, C. J., MALLERY, FINLEY, and HUNTER, JJ., concur.