[No. 36022. Department Two. October 11, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE M. SUMMERS, *Appellant.**

*Reported in 375 P. (2d) 143.

*Roy E. Jackson* and *Thor P. Ulvestad,* for appellant.

*Charles O. Carroll, Anthony Savage, Jr.,* and *August F. Hahn,* for respondent.

WEAVER, J.—A jury found defendant guilty of the crime of manslaughter. Defendant appeals from the judgment and sentence ordering him confined in the penitentiary for a maximum term of not more than twenty years. The sentence was, however,

" . . . Suspended upon the following conditions: (1) pay the family of William Conley $934.90 for funeral expenses; (2) support his own children (now living with their mother) in such amounts as his probation officer may direct; (3) use no intoxicants or frequent places where they are sold; (4) he shall drive a motor vehicle only for business purposes, but not after business hours; (5) obey all rules of his probation officer; (6) pay the costs herein forthwith."

There is evidence, which the jury was entitled to believe, that the defendant dealt one William Conley a heavy blow with his fist "in the region of the head" or on the chin, causing him to fly "through the air . . . hit at the edge of the sidewalk, then bounce off into the dirt." A police

officer testified that he was unable to detect Mr. Conley's pulse; he called an ambulance. Mr. Conley was pronounced dead on arrival at the hospital.

Dr. Rudolph Vracko performed an autopsy upon decedent. The doctor testified: that decedent had contre coup lesions of the brain, a condition that occurs when the brain is bounced back and forth in the skull as a result of external force; that the lesions were of recent origin; that decedent suffered a "subarachnoid hemorrhage into the various fissures of the brain"; that "the hemorrhage was fresh"; that decedent had a mild case of arteriosclerosis, which can produce brain hemorrhage, but the condition of decedent's blood vessels was not sufficiently advanced to do so; that decedent had an abrasion of recent origin in the parietal area of his skull; that the abrasion was not a "re-opened wound."

■ We conclude, as did the trial court, that evidence of the blow delivered by defendant, together with the testimony of the autopsy surgeon, if believed by the jury, was sufficient to establish a causal connection between decedent's death and the conduct of the accused, thus establishing the corpus delicti of the crime. It was not error to submit the case to the jury.

Defendant assigns error to the trial court's rejection of evidence that decedent suffered a head injury and was hospitalized about a month prior to the altercation between defendant and decedent.

■ We do not find the record as clear and concise as defense counsel contends. The question of the admissibility of evidence of defendant's prior head injury was first discussed by counsel in the judge's chambers before a witness was sworn to testify before the jury. The trial court said:

"If that would be the limit of your testimony, then the objection would be sustained because it would not be relevant under these authorities; and the prior accident, or injury, not being the proximate cause of the death a month later, it serves no useful purpose as far as I can see."

Later, the state announced it had subpoenaed the doctor and the hospital records appertaining to decedent's prior

head injury, but did not intend to produce them. The deputy prosecuting attorney said:

" . . . We would be glad to have them down here if . . . [defense counsel] wants them, provided he puts them on as his witnesses. . . ."

The court again stated to defense counsel:

" . . . You have as yet laid no foundation to show the relevancy. . . . Those people are available to be interviewed if defense counsel wants to talk to . . . [them], I presume. If you find that they do support your theory, you may have them brought in as defense witnesses. . . ."

The witnesses were not called; the hospital record was not offered; the relevancy of the proposed testimony was not established, either by evidence or offer of proof.

The trial court's conclusion that the evidence was not admissible under the posture of the record is supported by the rationale of this court's decision in *State v. Baruth,* 47 Wash. 283, 296, 91 Pac. 977 (1907). In that case defendant was charged with murder and convicted of manslaughter. She sought to prove that the wounds inflicted were not mortal and that decedent had not received the best medical treatment. The evidence was excluded, the court saying:

" . . . Where one unlawfully inflicts upon the person of another a wound calculated to endanger or destroy life, it is no defense to a charge of murder where death ensues to show that the wounded person might have recovered if the wound had been more skillfully treated. . . . He must show that the negligent and unskillful treatment was the sole cause of death, before he can escape the consequences of his unlawful act on this ground. [Citing authorities.] . . ."

See also: *State v. Little,* 57 Wn. (2d) 516, 521, 358 P. (2d) 120 (1961); *State v. Karsunky,* 197 Wash. 87, 99, 84 P. (2d) 390 (1938); *State v. Richardson,* 197 Wash. 157, 164, 84 P. (2d) 699 (1938).

Further, error is not assigned to jury instruction No. 4, which states:

"If a person unlawfully inflicts upon another person a

physical injury which results in the latter's death, such conduct of the former constitutes an unlawful homicide, even though the injury thus inflicted was not the only cause of the death, and although the person thus injured had been already enfeebled by disease, injury, physical condition or other cause, and although it is probable that a person in sound physical condition thus injured would not have died from the injury. . . ."

The instruction became the law of the case.

■ We do not find merit in defendant's contention that he was prejudiced by the state's failure to call several witnesses who had been certified by the state pursuant to RCW 10.37.030. He did not claim surprise, ask for a continuance in order to subpoena the witnesses, or advise the court by an offer of proof what he intended to prove by them. RCW 10.37.030, 10.46.050, 10.52.040, and Rule of Pleading, Practice and Procedure 101.16W, RCW Vol. 0, provide the method by which defense counsel in a criminal case may subpoena witnesses. The procedure was not followed. Defendant was not deprived of the right to "compulsory process to compel the attendance of witnesses in his own behalf." Washington Constitution, Art. 1, § 22 (amendment 10). The right to process to compel the attendance of witnesses must be asserted and maintained.

■ Finally, defendant assigns error to conditions (1) and (2) of his suspended sentence (quoted *supra*)—the payment of decedent's funeral expenses, and payment of support money for defendant's children ". . . in such amounts as his probation officer may direct. . . ."

RCW 9.92.060 provides in part:

"Whenever any person shall be convicted of any crime . . . the court may in its discretion, at the time of imposing sentence upon such person, direct that such sentence be stayed and suspended until otherwise ordered by such court, and that the sentenced person be placed under the charge of a parole or peace officer during the term of such suspension, upon such terms as the court may determine: *Provided,* That as a condition to suspension of sentence, the court may require the convicted person to make such monetary payments, on such terms as the court deems appropriate

under the circumstances, as are necessary (1) to comply with any order of the court for the payment of family support, (2) to make restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question, . . ."

To require payment of decedent's funeral expenses as a condition of the suspended sentence is clearly within the ambit of subsection 2 of the statute, quoted *supra*.

We conclude, however, that to require defendant, as a condition of his suspended sentence to "support his own children (now living with their mother) in such amounts as his probation officer may direct," is void.

 First: The condition is not within the limits fixed by the statute, which permits the court, as a condition to the suspension of sentence, to require compliance with any *order of court* for the payment of family support. It does not authorize, as a condition of suspension, an order for payment of support where none existed.

Defendant states in his brief (and it is not controverted by the state):

". . . it is sufficient to say that when the divorce action between defendant and his first wife did not require payment of support the Court was, by its suspension, modifying the decree in that case. . . ."

 Second: The condition does not come within the limits of the statute for the further reason it does not bear a reasonable relation to defendant's duty to make reparation, or tend to prevent the future commission of crimes.

In *Redewill v. Superior Court of Maricopa Cy.*, 43 Ariz. 68, 81, 29 P. (2d) 475 (1934), support of a child beyond majority was held void as a condition of a suspended sentence. The court said:

"We are reluctant indeed to interfere with the discretion exercised by the trial court in imposing conditions on a suspension of a sentence, and shall uphold any such conditions which on any reasonable theory tend to cause a defendant to make reparation for any crime which he may have committed, or to restrain him or others from the commission in the future of other crimes; but where the condition has no bearing on either of these two matters, but relates only

to a future moral and not legal obligation, we think it is an abuse of the discretion vested in the trial court to fix such condition in the first place, or to revoke the suspension of sentence theretofore granted for no other reason than a failure on the part of defendant to fulfill the illegal condition. . . ."

■ Third: It is an unlawful delegation of judicial authority to authorize the probation officer to fix the amount of the payments. *People v. Good,* 287 Mich. 110, 117, 282 N. W. 920 (1938); *People v. Sutton,* 322 Mich. 104, 33 N. W. (2d) 681 (1948).

Should we permit the suspended sentence to stand with the void condition stricken, or should the judgment and sentence be reversed and the cause remanded so that the trial court may resentence defendant?

We are mindful that RCW 9.92.060, quoted *supra,* places the power to suspend sentence upon conditions within the *discretion* of the *trial* court, not this court.

We are obliged, therefore, to reverse the judgment and remand the cause to the superior court with direction that defendant be resentenced.

It is so ordered.

FINLEY, C. J., DONWORTH, HUNTER, and HAMILTON, JJ., concur.