[No. 37436.   En Banc.   March 31, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHNNY FRANK EDWARDS, *Appellant.**

*Reported in 412 P.2d 747.

*Jack Steinberg,* for appellant.

*Charles O. Carroll* and *Richard M. Ishikawa,* for respondent.

HALE, J.—There was a shooting affray at the Black & Tan night club in Seattle. Three eyewitnesses said that, during the early morning hours of Saturday, May 25, 1963, Johnny Frank Edwards fired several shots through the glass section of the main door at Charlie King, the doorman. One round put a hole through Mr. King's hat; he was wearing it at the time. Mr. King got a gun and fired back. They exchanged several more shots, but no one was hit.

A jury found defendant Edwards guilty of assault in the second degree and he appeals the sentence of 10 years' imprisonment, execution of which was suspended on condition of 1 year's confinement in the county jail.

From two versions of the event, the jury accepted that of the state's. The state's evidence, derived largely from the testimony of Alex Palmer, owner of the Black & Tan,

Charlie King, the doorman, and Barbara McDonald, a waitress, showed defendant to be the man who fired the shots. It appeared that Edwards entered the Black & Tan about midnight with a group of people, and 2 hours later he and two other men ran out of the main entrance, up the entrance stairway, and out through a second door leading to 12th Avenue. Palmer and King followed them to see what was up, but got to the top of the stairs only in time to observe three cars moving south on 12th Avenue, the first of which went straight ahead while the second and third turned west at the next intersection. No one could identify the occupants or establish that Edwards was in any one of the three cars.

A few minutes later, according to the state's evidence, Edwards drove up in what Palmer supposed was the first car he earlier had noticed leaving the parking lot. Palmer, seeing Edwards park the car in the lot, walked up the stairs to meet him just outside the night club; the two then walked side by side down the steps to the main door of the club. According to waitress Barbara McDonald and doorman Charlie King, Edwards carried a gun in his hand as he descended the steps alongside Palmer. At the foot of the stairs outside the main doorway, as the two men approached the doorway guarded by Charlie King, the defendant made a vague remark about killing a woman. King, seeing the gun in Edwards' hand, refused to open the door to either Palmer or Edwards. Edwards, the others said, then pushed Palmer aside and fired through the glass section of the main door toward King. Palmer, turning quickly, ran back up the steps and over to his own car in the parking lot from where, he says, he saw Edwards sprint out of the club to his own car in the same parking lot and drive away at a high rate of speed.

Two police officers, observing Edwards speed away, gave immediate chase to arrest him for speeding and overtook and apprehended him before he could get out of their sight. When Palmer drove up, they heard him accuse Edwards of shooting up his club and Edwards deny it. A search of the defendant's person and his automobile failed to show a

weapon and, despite the car being in constant view of the officers during the brief pursuit, no weapon was ever found. The foregoing summarizes the events largely as the state's evidence depicted them.

Defendant's case presented a different picture of the shooting. Defendant testified that he went to the Black & Tan that night in the company of Samuel Moore, Annie Ruth White, Odessa Burkes, a Mrs. Jones, a Mrs. Caldwell, and another individual named Foster. He said that a disturbance occurred at the table behind them and they saw two men run out of the room. Defendant said that he and Samuel Moore, out of curiosity, followed the men from the club where they saw them go into the parking lot across the street.

Moore and Edwards then went over to Moore's car and from there saw their friend Annie Ruth White leave the club and walk around the corner of 12th and Jackson. According to Edwards, Moore then left his car and walked towards her to overtake her. Defendant said he started across the street toward the club when he heard shots coming from it so, to avoid trouble, he returned to his car at the parking lot, warmed up the engine, and, seeing a number of people coming from the club, drove rapidly up 12th Avenue only to be stopped shortly by the police. As the police were questioning him, he said, Alex Palmer arrived and accused him of shooting up the Black & Tan, an accusation that defendant vehemently denied.

Nathaniel Peace, a defense witness, gave a third version to the effect that Edwards was inside the Black & Tan when the shooting took place outside. He said that he was with a different group at another table in the night club, and noticed Edwards in the club when, from somewhere outside, he heard the sound of shooting. Right after hearing the shots, he saw Edwards leave the place and he in turn followed Edwards out of the building. His testimony thus places defendant inside at the time the shooting took place outside.

Defendant makes nine assignments of error, one of which involves the right to compulsory process. Because we think

that a new trial should be granted on this question, our discussion will be limited to the one assignment of error. The others relate to claimed errors arising out of events and circumstances unlikely to recur at another trial and will not be discussed.

Defendant contends that the court erroneously refused to compel the attendance of three witnesses on his behalf and that the refusal constituted a denial of his constitutional right to compulsory process.

The constitution and statutes of Washington leave little room for construction concerning the right to compulsory process in criminal cases.

Article 1, § 22 (amendment 10), of the Washington State Constitution, states:

> In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, *to have compulsory process to compel the attendance of witnesses in his own behalf* . . . . (Italics ours.)

The legislature implemented the constitution by RCW 10.46.050, which reads:

> Every person charged with the commission of a crime shall have the right upon the trial of such charge to be heard in person or by counsel, and to produce witnesses and proofs in his favor and to have compulsory process to compel the attendance of all witnesses who may be necessary for his proper defense.

And the United States Constitution in equally forthright language guarantees this identical right through the Sixth Amendment:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; *to have compulsory process for obtaining witnesses in his favor,* and to have the assistance of counsel for his defense. (Italics ours.)

The issue of compulsory process arose in conjunction and should be considered in pari materia with an application for a short recess or continuance in the trial. It came about in this way: Shortly before 11 a.m., on the last day of trial, the defendant requested the court to order the attendance of Samuel Moore, Mrs. Caldwell and Annie Ruth White, the individuals with whom he had gone and in whose company he says he remained at the Black & Tan until after the disturbance took place. Samuel Moore had been mentioned more than 20 times in the testimony of several earlier witnesses, and both Miss White and Mrs. Caldwell had likewise been referred to several times in the evidence in a way to indicate that the three witnesses had been present and would be expected to have some testimonial knowledge of the circumstances preceding and following the shooting.

Defendant's counsel informed the court that he had first caused a subpoena to be served on witness Moore requiring his attendance at 3:30 the preceding day and that the witness had failed to appear. Then he had served Moore again the preceding night commanding attendance at 9:30 a.m., and also had subpoenas served on witnesses Caldwell and White but that none of the three had appeared at court. Here is a record of proceedings upon which defendant relies in part to show denial of compulsory process:

[Defendant's Counsel] I did want your Honor apprised of this and then I would make the appropriate motion. With reference to the time and so forth, we are prepared to bring at this time one additional witness, Mrs. Edwards, whose testimony will only be a matter of a few minutes. We are prepared at this time and are so making now a motion to the Court to exercise its powers to compel the immediate attendance in this Court of the three witnesses. We would very much like, your Honor, to have this trial go on with the same jury. I recognize the inconvenience to the Court, but we do feel that it would be handled more expeditiously if, perhaps, after the conclusion of this witness' testimony the Court would recess until 1:30 for the purpose of having these other witnesses in attendance.

THE COURT: The motion will be denied. RCW 10.46-.080; State vs. Griffith, 52 Wash. (2d), and the recent case

of Northern State Construction Company vs. Banchero, decided November 14th.

From the foregoing, it is noted that the defendant sought two things: (1) a recess, after completing the testimony of Mrs. Edwards, until 1:30, and (2) compulsory process.

By the time the court had made its ruling, the jury reconvened, and the trial resumed—the statement of facts does not indicate the time—it would have been about 11:15 in the morning. Defendant, on denial of his oral motion, then called his wife, Minnie Edwards, as a witness. She testified she had served Samuel Moore with a subpoena the night before and also had personally served Annie Ruth White and Mrs. N. E. Caldwell with subpoenas. Defendant offered copies of the subpoenas in evidence, which the court rejected as irrelevant. Mrs. Edwards' testimony and subsequent colloquy probably took until 11:30 or 11:40 a.m. Although apparently issued under RCW 5.56.020, the statute governing the issuance of subpoenas by counsel in civil cases, neither the intended witnesses nor the state moved to quash them for insufficiency.

On their face, the subpoenas, if unchallenged, seem legally adequate to compel attendance. They required the named witnesses to be in attendance at 9:30 a.m., December 13, 1963, to give evidence on behalf of the defendant; ran in the name of the State of Washington; were properly entitled as to cause and number; and, save for being issued over the signature of counsel instead of the judge, met the requirements contemplated by Rule of Pleading, Practice and Procedure 101.16W, RCW vol. 0, for subpoenas to be issued on order of the court in criminal causes. Each subpoena had a boldly printed caveat to fail not at peril.

After Mrs. Edwards concluded her testimony, the defendant renewed the question of compulsory process. Concerning the court's refusal to allow the subpoena forms in evidence and the request for compulsory process, the following colloquy took place:

THE COURT: Very well. I might point out for the record that the last offered exhibits with reference to the

subpoenas have been refused and will not go to the jury room for the reason they serve no purpose. They apparently refer to persons who might be offered as witnesses by the defendant, but there has been and now is no showing before the Court as to the materiality of any evidence that such persons might give. The statute and the supporting cases are quite clear that there can be no continuance of a criminal or civil case and no compulsion of witnesses to attend in the absence of a suitable motion by the defendant supported by affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and place of residence of the witness or witnesses, and the substance of the evidence expected to be obtained, and if the Prosecuting Attorney then admits such evidence would be given, thereupon it would be considered as actually given at the trial. This makes for orderly procedure.

MR. STEINBERG: May I respond to that, your Honor?

THE COURT: No, sir. You have made no proper motion and, therefore, in the course of argument no comments will be made to absent witnesses or what they might testify to if they were present. Bring in the jury.

MR. STEINBERG: May I be heard further?

THE COURT: Yes, sir.

MR. STEINBERG: The Court, of course, can appreciate *that we are in no position to deliver affidavits at this point of what these people would testify to because we didn't anticipate they would not be here. Secondly, as to what they would testify to, it has already been established, your Honor, that all three of these witnesses were present at the Black and Tan night club on the evening in question; that all three of them sat at the table together, and specifically it has already been testified to by several persons, two at least, that Sam Moore and the defendant Edwards walked out of the place together.* Further, it has been testified to that Edwards and Moore were on the outside of the night club at the time of the shooting.

THE COURT: Yes. There has also been testimony that they were in the inside.

MR. STEINBERG: I appreciate that. Quite often in these matters you might have conflict, but I do not feel, therefore, it would be necessary to inform the Court what the testimony would be. I assume that the Court would be

aware of what we would attempt to prove by these witnesses.

THE COURT: I have no way of knowing what an alibi witness would say. When the others did not appear at 9:30 and your client did not either, you then had an opportunity to decide what to do about it and indicate to the Court what the testimony might be so that the Prosecuting Attorney and I might determine what action could be taken.

MR. STEINBERG: Well, I—

THE COURT: No offer having been made until about 11:15, the colloquy is not now timely and serves no useful purpose. (Italics ours.)

The trial continued on past 12 noon until, after instructions and short final arguments, the case was submitted to the jury at 12:27, and the court then recessed to 1:30. In passing, we take notice that the King County Superior Court customarily takes its luncheon recess at 12 noon and reconvenes at 1:30, the time to which the recess was requested by defendant.

Historically, the legislature and this court have kept viable the right to compulsory process. Supplementing the court's inherent powers to compel the attendance of witnesses, RCW 2.28.010 adds a statutory authority. And RCW 10.52.040 expands these powers by requiring that all witnesses subpoenaed for the state and defense may be compelled to give evidence in open court. Rule of Pleading, Practice and Procedure 101.16W, RCW vol. 0,[1] sets up the

---

[1]"Subpoenas for witnesses on behalf of defendants in criminal cases shall not be issued except upon order of court. Application for such order shall be based upon the affidavit of the defendant or of his counsel showing the names of the witnesses, with their addresses, if known, and accompanied by a certificate of the defendant's counsel that the testimony of such witnesses is material to the defense. Such application shall be made not less than five days before the date fixed for trial: *Provided,* That in cases of emergency the court may in its discretion shorten such time.

"At the time of making such application, notice thereof, with a statement of the names and addresses of the witnesses for whose attendance subpoenas are thus sought, shall be served upon the prosecuting attorney.

"When so required by the court, the defendant or his counsel shall

.judicial machinery for carrying out the foregoing rules by providing for the issuance of subpoenas through court order.

To assure fair play, RCW 10.37.030 requires the prosecuting attorney to file with the clerk and serve upon the defendant a list of witnesses he intends to call, and imposes a reciprocal duty upon the defendant, but allows either party, with the court's permission, to add to his list of witnesses at any time before trial.

█ That the question of compulsory process in criminal cases involves such disparate elements as surprise, diligence, materiality and maintenance of orderly procedure may be seen in a number of cases which turn on whether the accused has made a reasonable showing of these factors (*State v. Hogan*, 29 Wn.2d 407, 187 P.2d 612 (1947); *State v. Thomas*, 8 Wn.2d 573, 113 P.2d 73 (1941); *State v. Baker*, 150 Wash. 82, 272 Pac. 80 (1928)); and this court leaves the decision largely to the discretion of the trial court to be disturbed only on a showing that the accused was prejudiced by the denial. *State v. Lunsford*, 163 Wash. 199, 300 Pac. 529 (1931); *State v. Anderson*, 132 Wash. 130, 231 Pac. 456 (1924). But in none of these cases do we find a rule appropriate to the peculiar circumstance of the instant cause.

In *State v. Summers*, 60 Wn.2d 702, 375 P.2d 143 (1962), cited by the state here, appellant assigned error to the state's failure to call several witnesses who had been named on its list pursuant to RCW 10.37.030. We saw no error in such ruling for the reason that appellant "did not claim surprise, ask for a continuance in order to subpoena the witnesses, or advise the court by an offer of proof what he intended to prove by them." *State v. Summers, supra* at 706. Nor do *State v. Smythe*, 148 Wash. 65, 268 Pac. 133 (1928) and *State ex rel. Thurston Cy. v. Grimes*, 7 Wash. 445, 35 Pac. 361 (1893), referred to by the respondent, seem controlling here.

---

show by affidavit, in substance, the testimony which is expected to be obtained from such witnesses, but such affidavit shall not be filed or its contents disclosed by the court until after the trial of such defendant."

*State v. Smythe, supra,* turns not on a constitutional right in the accused to compulsory process but on lack of diligence in making timely service of subpoenas and failure to make sufficient offer of proof on two witnesses, one of whom was absent from the state and the other ill in the hospital. The case simply holds that denying a continuance of several days in a moonshining case was no abuse of discretion.

*State ex rel. Thurston Cy. v. Grimes, supra,* where we said "the accused is not at liberty to sow the country broadcast with subpoenas. . . . so that there may be no wasteful expense" seems inapplicable because neither the danger to be averted nor the wasteful expense to be avoided appears likely in the instant case. And we do not reach the question as to whether the state could obviate the continuance by offering to concede the testimony of the witnesses or the truth of their testimony because the question did not arise.

*State v. Hoggatt,* 38 Wn.2d 932, 234 P.2d 495 (1951), a prosecution for second degree assault, seems more closely in point than the other cited cases. There, shortly before resting its case, the state announced that it would call as a witness a physician who had attended the victim after the assault. Defendants objected on the ground that the doctor had not been listed as a state's witness but said they would try to interview the doctor during the noon hour. They talked to the doctor during the noon recess and, upon the reconvening of court, renewed their objection and requested time to consult with and call a physician of their own choosing. Holding it error to deny a continuance, we said:

> They made no formal motion for a continuance, but it is apparent from the record that they sufficiently apprised the court of a desire for an opportunity either to consult with or secure the attendance of a physician of their own choosing for the purpose of interrogating him on the same subject to be covered by the physician called by respondent.
>
> It was within the discretion of the court to permit respondent to call a witness even though his name was not included in the list of witnesses served on appellants, but appellants were entitled, after being apprised of the

identity of the witness, to have a reasonable time within which to consult a physician of their own choosing to determine whether they might obtain rebuttal testimony in support of their defense to the charge of assault in the second degree. We think the discussion had between the trial judge, the prosecuting attorney, and appellants when the question arose was sufficient to indicate to the court that appellants desired an opportunity to obtain rebuttal testimony; also that they would be prejudiced if such opportunity was denied them. *State v. Willis,* 37 Wn. (2d) 274, 223 P. (2d) 453.

In addition to such issues as diligence, surprise and materiality, there must be considered also the problem of orderly procedure in the trial. But where the request for compulsory process came before the court at about 11:15 a.m., coupled with a request for a recess until 1:30 to allow time for enforcement of the subpoenas during the customary noon recess, we do not see how the court's schedule of trial or orderly procedure would have been seriously disturbed, the orderly dispatch of business impaired, or the prosecution's case unfairly damaged by allowing the recess and issuing the process.

The situation does invite further comment concerning defendant's failure to comply with the formula for subpoenaing witnesses in criminal cases prescribed by RPPP 101.16W. That rule, it should be observed, contains an emergency proviso[2] designed to accommodate it to such a situation as arose here during the trial—the surprising, unexpected and refractory refusal of witnesses to attend and give evidence. Neither the state nor the witnesses urged that the subpoenas were void because not issued pursuant to court order under RPPP 101.16W.

An affidavit of materiality required by RPPP 101.16W or an oral offer of proof with request for leave to file an affidavit of materiality later, as was attempted in *State v. Smythe,* 148 Wash. 65, 268 Pac. 133 (1928), are not the exclusive standards by which the application for a

---

[2] ". . . Such application shall be made not less than five days before the date fixed for trial: *Provided,* That in cases of emergency the court may in its discretion shorten such time."

recess and compulsory process may be judged. Occasions may arise when both the defendant and the prosecution will find it impossible to ascertain what the testimony will be, because the witnesses either evade interrogation or refuse to divulge their knowledge. A party in a criminal cause believing what the testimony ought to be but unable to ascertain in advance what the witness will say, may find it necessary to risk forcing the witness to appear and give evidence and the rules should accommodate such a contingency.

■ No rule of criminal procedure can or ought to be construed or applied so as to abridge a fundamental constitutional right. The unexpected refusal of the three subpoenaed witnesses to honor the subpoenas gave defendant reasonable grounds to claim surprise at their failure to attend. Colloquy between court and counsel considered in connection with the testimony showing that the absent witnesses possessed testimonial and material knowledge of the facts in issue supplied an adequate predicate for granting the short recess and the issuance of process.

■ Our opinion would be otherwise if it appeared that defendant's application were not made in good faith and in an honest hope that the witnesses were available. Good faith is, of course, an essential ingredient to any application for a recess, postponement or continuance, and for the issuance of process. If it is manifest that the request for recess or continuance is designed to delay, harry, or obstruct the orderly process of the trial, or to take the prosecution by surprise, then the court can justifiably in the exercise of its discretion deny it. But where, as here, the defendant took specific steps to assure the attendance of witnesses—and then made timely application to enforce their attendance— it was an abuse of discretion for the court to refuse a recess in the defendant's testimony of about 45 minutes to enable the defendant to compel attendance. The fact that defendant had served a civil subpoena on each of the witnesses once, and on one of them twice, supports the bona fides of his request for the short recess and compulsory process.

The judgment is, therefore, reversed and a new trial ordered.

ROSELLINI, C. J., DONWORTH, WEAVER, OTT, HUNTER, and HAMILTON, JJ., concur.

HILL, J. (dissenting)—I dissent.

The majority grants a new trial solely on the ground that the defendant was denied his right to compulsory process when the trial court refused to compel the attendance of three witnesses in response to a belated request by defense counsel. There was no showing whatsoever as to what these witnesses would testify, or as to what it was hoped they would testify.

Rule of Pleading, Practice and Procedure 101.16W provides:

Subpoenas for witnesses on behalf of defendants in criminal cases shall not be issued *except upon order of court.* Application for such order shall be based upon the *affidavit* of the defendant or of his counsel showing the *names of the witnesses,* with their addresses, if known, and accompanied by a *certificate of the defendant's counsel that the testimony of such witnesses is material to the defense.* Such application shall be made *not less than five days before the date fixed for trial: Provided,* That in cases of emergency the court may in its discretion shorten such time. (Italics mine).

The provisions of this rule are ignored by the majority. The only subpoenas that were ever issued for those witnesses were over the signature of defense counsel. The ones last issued required attendance of the persons on whom they were served at 9:30 a.m. on the last day of the trial. At that hour counsel knew that his desired witnesses were not present, yet not until 11:15 a.m. when he was ready to call his last witness (whose testimony he knew would be very brief) did he make any request of the trial court for a continuance, and for compulsory process to secure the desired witnesses.

The defendant not only completely failed to comply with the rule which we have quoted, but he likewise ignored the

statute governing continuances: RCW 10.46.080.[3] He could make no showing of *any* diligence, except that he had secured the service upon the desired witnesses of worthless subpoenas. There could be no showing of *due* diligence because he waited from 9:30 a.m., when he knew the desired witnesses had not responded to his subpoenas, until 11:15 a.m., when he was virtually ready to close his case, before bringing the matter to the attention of the trial court. Neither then, nor on his motion for a new trial, nor even on this appeal has there been any showing as to what the testimony of these witnesses would be.

On these facts it is impossible, in my view, to hold that the trial judge abused his discretion. It appears from the record that he had other matters scheduled beginning at 1:30 that afternoon and a continuance would have caused the postponement of those matters and resulting inconvenience. To hold that the court abused its discretion necessitates ignoring the provisions of both RPPP 101.16W and RCW 10.46.080.

The majority suggests that an emergency existed, because the desired witnesses had not responded to the subpoenas served upon them. This is not persuasive. Surely counsel was aware of the distinction as to who issues the subpoenas in civil and criminal cases.

The majority says that the subpoenas issued by the defense counsel,

> [S]ave for being issued over the signature of counsel instead of the judge, met the requirements contemplated by Rule of Pleading, Practice and Procedure 101.16W, RCW vol. 0, for subpoenas to be issued on order of the

---

[3]RCW 10.46.080. "A continuance may be granted in any case on the ground of the absence of evidence on the motion of the defendant supported by affidavit showing *the materiality of the evidence expected to be obtained,* and *that due diligence has been used to procure it;* and also the name and place of residence of the witness or witnesses; *and the substance of the evidence expected to be obtained, and if the prosecuting attorney admit that such evidence would be given, and that it be considered as actually given on the trial or offered and overruled as improper the continuance shall not* be granted. [Code of 1881, § 1077; 1877 p 206 § 7 . . . .]" (Italics mine.)

court in criminal causes. Each subpoena had a boldly printed caveat to fail not at peril.

One gets the impression from this that, after all, who signs a subpoena is a trifling matter; maybe it wouldn't even need to be signed by an attorney—the boldly printed caveat would still be there even if signed only by John Doe, or the almost equally well-known Richard Roe.

The majority say "on their face, the subpoenas, if unchallenged, seem legally adequate to compel attendance."

But they were not unchallenged, they were challenged by the only people who ever had any cause to challenge them, i.e., the people on whom they were served. How do you more effectively challenge a subpoena than by failing to observe it? To make clear just how effective these subpoenas were, the majority should explain just how these people are to be punished for their conduct in failing to respond to the "boldly printed caveat" of the seemingly "legally adequate" subpoenas.

It is my view that the subpoenas served were impotent documents. The application for a continuance and for compulsory process were not timely made; there was no showing of due diligence; and there was no showing as to the substance of the testimony sought to be obtained. Had there been any showing as to what the testimony of the desired witnesses would have been (as the statute requires), the prosecuting attorney might have been willing to admit that such testimony would be given, "and that it be considered as actually given at the trial or offered and overruled as improper." Under such circumstances, the statute requires that "the continuance shall not be granted."

The requirements of the rule and the statute make for orderly procedure. The result of the majority opinion makes for procedural chaos.

I would affirm the trial court.

FINLEY, J., concurs with HILL, J.