[No. 604-3.    Division Three.    April 11, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH ANTHONY ELLER, *Appellant.*

GREEN, C.J., dissents by separate opinion.

*John S. Biggs* (of *Reese & Mitchell*), for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for respondent.

McINTURFF, J.—On January 19, 1972 defendant Joseph Anthony Eller was charged by information with the crime of aiding and abetting the delivery of a controlled substance. The case was tried to a jury on February 29, 1972. Defendant was found guilty and he appeals.

The sole issue we reach on this appeal is whether the trial court erred in failing to grant defendant's motion for a continuance to permit him the right to use compulsory process to procure the attendance of Pat Thorson, a material defense witness.

The pertinent facts to this appeal are that on February 1, 1972 defendant filed a motion for an order authorizing discovery so he could interview Henry Francis Jensen, the prosecution's key witness. On February 14, 1972 the motion was set for hearing and defense counsel voluntarily withdrew the motion in open court upon an agreement with the prosecutor that he would be given access to the prosecution's primary witness, Henry Francis Jensen. Mr. Jensen, however, was not residing in the county and was not made available. On February 22, 1972 defense counsel filed a second motion, which again asked to have Henry Francis Jensen produced. In support of this motion defense counsel filed an affidavit which stated that Henry Francis Jensen would be a witness for the state; that defense had made repeated attempts to interview him but that he had not been handed over for examination; that the state had agreed to produce him but did not do so; that defendant was desirous of subpoenaing a woman named Pat, whose last name was unknown to him; that he believed Henry Francis Jensen knew where Pat was located.

On February 25, 1972 the court signed defendant's order

which required the prosecuting attorney to produce Jensen for interview by the defendant's attorney as soon as he came to Walla Walla County. On February 27, 1972, 2 days prior to trial, pursuant to the order, defense counsel was given the opportunity to interview Jensen. As a result of this interview the full name of the girl named Pat was determined and her former address in Walla Walla was discovered. Later the same day defense counsel learned that she had moved to Bellevue, Washington. He contacted her by phone and tried to convince her to come to Walla Walla and voluntarily testify. She refused to come. The next day, on February 28, 1 day prior to trial, defense counsel moved for a continuance to allow time to produce Pat Thorson by way of compulsory process.

The trial court denied the motion but allowed permission to employ co-counsel in Seattle to assist in procuring the attendance of Miss Thorson. He further allowed defendant the right to renew his motion on the day of trial. A King County subpoena was procured by co-counsel in Seattle and attempts were made via the King County Sheriff's office and a private process server in Seattle to serve Pat Thorson with a subpoena. These efforts were unsuccessful and on February 29, 1972, the date of trial, defendant renewed his motion for a continuance. In support of his motion for a continuance defendant's counsel made the following offer of proof:

> I think that she's material to the defense. In some respects Mr. Votendahl will explain to you that she is an impeaching witness, but she's more than that. *She also is a party to a transaction which is material here where there was a transfer of money and she was present.* I believe her testimony would be material to the defense and would be contradictory to a prosecution witness.
>
> I consider Pat Thorson to be a material witness because she was present at a transaction of money [on January 14] which the State's witness has told me was given to my client when in fact she'll testify it was not. The State's witness has told me that there were two people present at the initiation of this transaction, my

client and the State's witness. Miss Thorson will testify that's not true, that Claude Drake, who has already pled to this charge, was also present. And she will testify to inconsistencies, including the use of drugs on the part of the State's witness.

(Italics ours.) In denying the motion the trial court stated:

Well, I'm going to deny the Motion for a Continuance. It's not clear to me what Pat Thorson is going to testify to. Apparently she's not being cooperative and so therefore she's either a hostile or an uncooperative witness on the record which I have before me. But beyond that we have the jury here. This trial is scheduled for two days.

The record shows, however, that the jury was not yet empaneled.

The evidence shows that on January 14, 1972 Henry Francis Jensen, an undercover narcotics informant, contacted the Walla Walla Sheriff's office offering his services. He informed the sheriff's office that he felt he could possibly make a purchase of narcotics from certain individuals who lived in Walla Walla. Jensen was given approval by the sheriff's office. According to his testimony he arranged to buy $300 worth of amphetamines from Claude Elmer Drake, and from the defendant.

Jensen testified that he had a series of conversations with both Drake and the defendant, which culminated in a sale from Drake to himself on January 18, 1972. The defendant and Drake testified that defendant knew of the January 18, 1972 transaction between Drake and Jensen but that defendant did not participate in the sale of the drugs on January 18. The undisputed facts show that on January 18 codefendant Drake transferred six or ten bags of amphetamines to Jensen. The defendant states he was with Drake immediately preceding and after the sale but was not present during the transfer.

The state's case rested on the theory that the defendant aided and abetted the delivery of the controlled substance. In order to prove the case against defendant, evidence was introduced showing that, on January 14, 1972, Jensen wit-

nessed a sale of amphetamines from Drake and the defendant to Pat Thorson. Defendant's participation in the January 14 incident was denied by his own testimony and that of Drake.

■ Although the information charged defendant with the crime of delivery of drugs on the 18th and not the 14th of January, the trial court, over objection, properly allowed into evidence the collateral criminal conduct of January 14 because this evidence tended to show absence of accident or mistake and common scheme or plan. *See State v. McNeil*, 161 Wash. 221, 296 P. 555 (1931); *State v. Reynolds*, 51 Wn.2d 830, 322 P.2d 356 (1958); *State v. King*, 71 Wn.2d 573, 429 P.2d 914 (1967); *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968); and *State v. Gilmore*, 76 Wn.2d 293, 456 P.2d 344 (1969).

Further, evidence of the January 14 transaction was admissible because it was necessary to show an aiding and abetting for the crime charged on January 18, 1972.

Defendant contends the trial court erred in denying his motion for a continuance because as a result he was deprived of a reasonable time to procure Pat Thorson as a defense witness by compulsory process. We agree.

In *State v. Edwards*, 68 Wn.2d 246, 255, 412 P.2d 747 (1966) our Supreme Court stated:

> [T]he question of compulsory process in criminal cases involves such disparate elements as surprise, diligence, materiality and maintenance of orderly procedure . . . [The] cases . . . turn on whether the accused has made a reasonable showing of these factors (*State v. Hogan*, 29 Wn.2d 407, 187 P.2d 612 (1947); *State v. Thomas*, 8 Wn.2d 573, 113 P.2d 73 (1941); *State v. Baker*, 150 Wash. 82, 272 Pac. 80 (1928)); and this court leaves the decision largely to the discretion of the trial court to be disturbed only on a showing that the accused was prejudiced by the denial. *State v. Lunsford*, 163 Wash. 199, 300 Pac. 529 (1931); *State v. Anderson*, 132 Wash. 130, 231 Pac. 456 (1924).

Under the facts of the instant case the issue turns not merely on the question of continuance, which is solely a

question of manifest abuse of discretion on appeal (*see State v. Baker*, 150 Wash. 82, 272 P. 80 (1928)) but also on the question of continuance to permit the defendant to exercise his constitutional right to use compulsory process in a criminal case.

> Historically, the legislature and this court have kept viable the right to compulsory process. Supplementing the court's inherent powers to compel the attendance of witnesses, RCW 2.28.010 adds a statutory authority. And RCW 10.52.040 expands these powers by requiring that all witnesses subpoenaed for the state and defense may be compelled to give evidence in open court. Rule of Pleading, Practice and Procedure 101.16W, RCW vol. 0, sets up the judicial machinery for carrying out the foregoing rules by providing for the issuance of subpoenas through court order.

(Footnote omitted.) *State v. Edwards, supra* at 254. We find the rationale of *Edwards* controlling. Article 1, section 22, amendment 10 of the Washington State Constitution, RCW 10.46.050, and the sixth amendment to the United States Constitution make it clear that persons charged with a crime have a constitutional right to compulsory process to bring to trial witnesses deemed necessary for the defense. *State v. Edwards, supra; Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967).

█ As noted by Justice Hale in *State v. Edwards, supra* at 250:

> The constitution and statutes of Washington leave little room for construction concerning the right to compulsory process in criminal cases.

In the 1967 case of *Washington v. Texas, supra,* the Supreme Court of the United States made the right to have compulsory process for obtaining witnesses in favor of the defendant in a criminal prosecution binding upon the states. When defense counsel has acted diligently to procure witnesses, and he shows their testimony is relevant and material to the defense, a reasonable time must be allowed to procure compulsory process. Defense counsel

was diligent and has shown that the testimony of the missing witness would be material and relevant.

The state contends that Pat Thorson's testimony would have been only cumulative and impeaching. We cannot agree. The outcome of this case hinged upon the credibility of the state's informant and the credibility of the defendant and codefendant. Pat Thorson was a necessary witness because she witnessed the January 14 transaction; she was not making a living at testifying, as was the state's informant. She was not on trial, as was the accused, and she had not been found guilty, as had codefendant Drake. Testimony of Pat Thorson was vital to the defense because it is indicated by affidavit that, had she testified defendant did not participate in the sale of January 14, 1972, the jury may have reached a different conclusion regarding the guilt of the defendant.

■ *State v. Finnegan*, 6 Wn. App. 612, 495 P.2d 674 (1972), in discussing the harmless error rule, quoted from *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967), as follows:

> [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, . . .

(Footnote omitted.) We do not find the error is harmless because we cannot say beyond a reasonable doubt that the verdict would be the same with the addition of Pat Thorson's testimony.

The trial court, by denying defendant's motion for continuance, denied defendant's constitutional right to compulsory process of witnesses. Defendant was forced to rely on his own testimony, that of his properly impeached codefendant and the cross-examination of the state's informant. An eyewitness whose testimony would be material to the defense cannot be ignored.

The case is reversed and remanded for a new trial.

MUNSON, J., concurs.

GREEN, C.J. (dissenting)—I would affirm the trial court because I do not believe Pat Thorson's testimony would change the result.

Drake testified that on the evening of January 14 he made a sale of drugs to Pat Thorson and the informer; that defendant was not involved; and that he may have given some money to defendant that night, but it was only because defendant needed it and not because of any agreement for a split of the money.

Diane Cox, a "girl friend sort of" of the defendant, testified she saw Drake sell amphetamines to Pat Thorson and the informant on January 14 and saw Thorson hand money to Drake and no one else.

Defendant testified the transaction at his house on January 14, while in his presence, was between Drake, Pat Thorson and the informant; that he was not involved and did not handle any of the currency from the transaction. Defense counsel did not make a formal offer of proof; however, he represented that Pat Thorson would confirm defendant's statement to the extent that she dealt with Drake and not the defendant.

Defendant further testified that on January 17, the day before the sale that resulted in his being charged:

> I had gone to the house to see Pat Thorson. I had called Pat Thorson earlier that night and she said she wanted to buy a "spoon." So I took a "spoon" into the house, and she said she did not want to buy it. Jensen [the informant] then called Drake in. Drake talked to Pat about it and measured it out to her, and she still refused to buy it. Then Jensen had asked Drake if he could get a large quantity of amphetamines. . . . As I recall it, Mr. Jensen decided that he could get—he told *us* that — or he told Drake, but I was sitting there, that he could get money to buy a large quantity of narcotics. And he then asked Turk—or Drake if he could get—or if he could get access to a large quantity of amphetamines. . . . He said that he could possibly do it . . .

Jensen had said that if Drake could get it to meet him at Fancy Dan's at 1:00 o'clock the next afternoon.

(Italics ours.) When asked why he went to Fancy Dan's with Drake on January 18, defendant said:

Well, for one thing I wanted a cup of coffee, and he had asked me to go along, plus Jensen had said the night before that he would definitely like to see me there.

Defendant denied that his going to Fancy Dan's had any relation to the sale of drugs.

The record is clear that amphetamines were used in defendant's house in his presence; that defendant asked Jensen if he was an informer when Jensen and Thorson told him they wanted to purchase some drugs; that defendant was present on January 14 when a sale was made to Pat Thorson and used by her and the informer; that on the evening of January 17 defendant admittedly carried a "spoon" of amphetamines into Pat Thorson's residence, which she refused to buy; that defendant was present when the sale at Fancy Dan's was arranged; and that defendant was present in Fancy Dan's on January 18 when Drake delivered amphetamines to the informant, although he never witnessed the actual delivery. Additionally, defendant testified to his use of amphetamines and its effect upon him as a basis for his testimony as to the observed effect of its use upon the informer.

In my opinion, Pat Thorson's testimony that on January 14 she purchased drugs from Drake, and not the defendant, when considered in the context of the entire record, would have had no effect on the outcome of the trial. Consequently, the trial court's denial of the motion for continuance was, at the most, harmless error.

*State v. Edwards,* 68 Wn.2d 246, 255, 412 P.2d 747 (1966), cited in the majority opinion, is distinguishable and, in my view, is not controlling.

I would affirm.

Petition for rehearing denied June 4, 1973.

Appealed to Supreme Court June 13, 1973.