[No. 42848.    En Banc.    July 11, 1974.]

THE STATE OF WASHINGTON, *Appellant,* v. JOSEPH ANTHONY ELLER, *Respondent.*

*Arthur R. Eggers, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for appellant.

*John S. Biggs,* for respondent (appointed counsel for appeal).

HAMILTON, J.—Defendant, Joseph Anthony Eller, was charged by information on January 19, 1972, with the offense of aiding and abetting one Claude Drake in the deliv-

ery and sale of a controlled substance in Walla Walla County, Washington, on January 18, 1972. Claude Drake pled guilty. The defendant pled not guilty, and, following a 2-day trial before a jury, commencing February 29, 1972, was convicted and sentenced. Division Three of the Court of Appeals reversed the conviction by a 2-to-1 decision. *State v. Eller*, 8 Wn. App. 697, 508 P.2d 1045 (1973). The State has pursued its right of appeal to this court pursuant to RCW 2.06.030 and CAROA 50(e).

The primary issue here, as in the Court of Appeals, revolves about the trial court's denial of a defense motion for a continuance to permit the service of compulsory process upon a reluctant witness, one Pat Thorson, whom defendant asserted to be material to his defense.

In January 1972, an undercover narcotics informer, Henry F. Jensen, volunteered his services to the Walla Walla County Sheriff's office for the purpose of undertaking to arrange a covert narcotics purchase. His offer was accepted and thereafter the following events occurred leading up to and culminating in defendant's arrest and trial.

On or about January 14, 1972, Jensen appeared at the defendant's residence where he obtained a nickel or dime bag of "crank, speed" which he consumed, in part at least. Later he returned with Pat Thorson. Present in the residence on this occasion were the defendant, his girl friend, Diane Cox, a Pam Smelcer, and Gary and Mike Bundy. Claude Drake came in later. Negotiations were undertaken to procure a "spoon" of amphetamines for Pat Thorson. Jensen testified the negotiations were with the defendant and Drake. The defendant, Drake, and Ms. Cox testified the negotiations were with Drake only. In any event, a "spoon" of amphetamines was obtained and paid for by Ms. Thorson. It is admitted that the defendant received $10 from the proceeds of this sale, although when and for what purpose is in dispute. The defendant and Drake assert the $10 was paid later in the evening and only as reimbursement for food and groceries the defendant furnished his houseguests

and Drake from time to time. Likewise, it is conceded the defendant received a similar amount from two previous drug sales by Drake at his house, ostensibly for the same purpose.

On January 17, 1972, the defendant telephoned Pat Thorson. She requested a "spoon" of amphetamines. The defendant, with Drake, drove to her residence and the defendant took the "spoon" into the house, Drake remaining in the automobile. Jensen was present with Ms. Thorson. A controversy arose over the quantity of the "spoon" and Ms. Thorson declined to purchase it. Whether a discussion then ensued between Jensen and the defendant concerning a proposed $300 purchase of amphetamines or Drake was first summoned into the house before such discussion took place stands somewhat in dispute. Nevertheless, Jensen made the $300 proposal and Drake agreed to undertake to obtain the amphetamines. A meeting for the delivery of the drugs was scheduled for the next afternoon in a local restaurant. The defendant and Drake then left, going to a recreation center where the defendant played pool and Drake telephoned his source of supply.

The next morning the defendant and Drake, in defendant's car, proceeded toward the designated meeting place. The car, however, stalled part way there and they walked the remaining distance. Jensen met them at the appointed time and a discussion between Drake and Jensen took place in the restaurant's parking lot, following which Drake left to obtain his car and the drugs. Jensen and the defendant remained in the restaurant. Upon Drake's return, Jensen met him in the restroom, received 6 or 10 bags of amphetamines, and paid Drake $50 assuring him the remainder of the purchase price was in a locker at the bus station. The transfer was out of the presence of the defendant and he denied any part in the transaction, other than giving Drake a quarter with which to call a taxicab. He stated his reason for going with Drake to the restaurant to be:

Well, for one thing I wanted a cup of coffee, and he had asked me to go along, plus Jensen had said the night before that he would definitely like to see me there.

Drake and the defendant were arrested as they left the restaurant and entered Drake's automobile by officers posted in the area. As heretofore indicated, the defendant was charged as an aider and abettor in the transfer of the drugs at the restaurant and pled not guilty, with his trial being scheduled to commence on February 29, 1972.

On February 1, 1972, counsel for the defendant served and filed a motion for an order authorizing discovery so he could interview Jensen. This motion was subsequently withdrawn when the State agreed that defense counsel would be given access to Jensen. Jensen, however, was out of the state and was not made available. Defense counsel filed a second motion on February 22, again requesting the production of Jensen. Among other things, counsel asserted in a supporting affidavit that the defendant desired to sub-poena a woman named Pat, whose last name and whereabouts were unknown to him, and that he believed Jensen knew where she was. This motion was granted by the trial court on February 25, and Jensen was rendered available for interview on February 27.

As a result of the interview, defense counsel learned that Pat Thorson had moved to an address in Bellevue, Washington. He immediately contacted her by telephone and requested that she come to Walla Walla and testify voluntarily. This she refused to do.

The next day, February 28, 1972, defense counsel moved for a continuance to permit production of Ms. Thorson by compulsory process. The trial court then denied the motion, with permission for its renewal, and authorized employment of cocounsel in Seattle along with air transportation at state expense to facilitate the procurement of Ms. Thorson's attendance as a witness. Cocounsel was obtained, and service of process was undertaken through the King County Sheriff's office as well as by private process server. These efforts were unavailing, and it was reported to de-

fense counsel that it appeared Ms. Thorson was purposely evading service of process.

On the morning of February 29, 1972, before trial commenced, defense counsel renewed his motion for a continuance, relating the efforts made and the results thereof in attempting to serve Ms. Thorson. He further advised the trial court that he believed her testimony would be material in that she would contradict Jensen's testimony as to any participation by the defendant in the sale of the "spoon" of amphetamines to her on January 14, and the negotiations of January 17, leading to the transfer of drugs on January 18, 1972. He contended, too, that she could testify as to Jensen's use of drugs.

Counsel also candidly acknowledged that he understood there was a criminal charge pending against her in Walla Walla County, and that some of her prospective testimony could be self-incriminatory as to which she could claim her privilege under the fifth amendment to the United States Constitution.

The trial court denied the motion. In so doing, the following colloquy took place:

> THE COURT: Well, I'm going to deny the Motion for a Continuance. It's not clear to me what Pat Thorson is going to testify to. Apparently she's not being cooperative and so therefore she's either a hostile or an uncooperative witness on the record which I have before me. But beyond that we have the jury [panel] here. This trial is scheduled for two days. I think you should continue your efforts over there and probably involve the Sheriff in it too, Mr. Biggs, through co-counsel. MR. BIGGS: I should add I already have. I told my brother this morning to do this. THE COURT: To persist, and it may be that we'll be able to obtain her. But at least I think that before I would conclude that this jury wouldn't have a right to deliberate and determine guilt without her testimony by the time we have reached that stage we may at least have had an opportunity for your brother to talk to her so we can learn in detail what she's going to testify to. And I assume if he can talk to her we can probably get her here.

A jury was thereafter impaneled and the trial proceeded to its conclusion without further mention or motion relating to the attendance of Ms. Thorson.

■ A threshold issue, arising from one of defendant's assignments of error before the Court of Appeals, deserves mention. Defendant contended that the trial court committed error in admitting, over his objection, evidence concerning the January 14, 1972, occurrences at his residence. Such, he asserted, constituted evidence of collateral criminal conduct unrelated in time, place, and purpose to the transaction of January 18, 1972, for which he stood charged.

We agree with the Court of Appeals that the trial court properly allowed the challenged testimony. Clearly this evidence tended to show motive, intent, absence of accident or mistake, a common scheme or plan, and, circumstantially, an aiding or abetting in connection with the transaction of January 18, 1972. As such it was admissible. *State v. Gilmore*, 76 Wn.2d 293, 456 P.2d 344 (1969); *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. King*, 71 Wn.2d 573, 429 P.2d 914 (1967); *State v. Reynolds*, 51 Wn.2d 830, 322 P.2d 356 (1958); *State v. McNeil*, 161 Wash. 221, 296 P. 555 (1931).

We turn now to the principal issue, *i.e.*, did the trial court err in denying defendant's final motion for continuance, thereby depriving him of the constitutional right to compulsory process as well as the right to present a material witness on his own behalf?

■ With respect to similar issues, we have noted that continuances and compulsory process in criminal cases involve such disparate elements as surprise, diligence, materiality, redundancy, due process, and the maintenance of orderly procedures; and that this court leaves the decision largely within the discretion of the trial court, to be disturbed only upon a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied. *State v. Edwards*, 68 Wn.2d 246, 412 P.2d 747 (1966); *State v. Moore*, 69 Wn.2d 206, 417 P.2d 859 (1966); *State v.*

*Schaffer,* 70 Wn.2d 124, 422 P.2d 285 (1966); *State v. Derum,* 76 Wn.2d 26, 454 P.2d 424 (1969).

We have also noted, as has the United States Supreme Court,[1] that there are no mechanical tests for deciding when the denial of a continuance violates due process, inhibits a defense, or conceivably projects a different result; and, that the answer must be found in the circumstances present in the particular case. *State v. Cadena,* 74 Wn.2d 185, 443 P.2d 826 (1968).

Applying these principles we look to the State's contentions on appeal.

The State initially maintains that defendant's February 29, 1972, motion for continuance was properly denied, because of a failure on the part of defense counsel to exercise due diligence in timely ascertaining the full name, whereabouts, and address of Ms. Thorson. With this contention we cannot agree. Neither the trial court nor the Court of Appeals predicated their respective rulings upon any lack of diligence on the part of defense counsel in seeking the attendance of Ms. Thorson. And, the record amply sustains their view in this regard. Once defense counsel learned the full name and current address of Ms. Thorson, following the State's belated production of the undercover agent, Jensen, he proceeded with commendable energy and diligence in an effort to obtain her appearance as a witness. We accordingly find no merit in this aspect of the State's argument.

Next, the State asserts that the testimony of Ms. Thorson as projected by defense counsel was speculative and uncertain, and, as it turned out would, at best, have been merely cumulative of the evidence adduced at trial, all without appreciable effect upon the ultimate result.

With this contention we agree.

Defendant premises his argument as to the need for Ms. Thorson's testimony, essentially, upon two grounds. First,

---

[1]*Ungar v. Sarafite,* 376 U.S. 575, 11 L. Ed. 2d 921, 84 S. Ct. 841 (1964).

he urges that her testimony relative to the negotiations for amphetamines on January 14 and 17, 1972, would contradict Jensen's testimony relative to defendant's participation in those negotiations and the resultant transactions. Secondly, he asserts that she could testify as to Jensen's use of amphetamines.

With respect to the negotiations and transaction on January 14, 1972, at defendant's residence, Jensen was the only witness to testify as to any direct participation therein by the defendant. The defendant, however, did admit that on previous occasions drug transactions had occurred on his premises and that when inquiry was propounded to him by Jensen on January 14, 1972, as to a prospective purchase, he referred Jensen to Drake. Diane Cox, Drake, and the defendant all testified, in contradiction to Jensen, that the ultimate negotiations and purchase transpired between Jensen, Thorson, and Drake. Three other persons, i.e., Pam Smelcer and Gary and Mike Bundy, who conceivably may have witnessed the events of the evening, were not called as witnesses. Finally, it was admitted by the defendant and testified to by Drake that defendant, for whatever purpose, did receive $10 from the proceeds of the transaction.

As to the events occurring on January 17, 1972, defendant conceded that he called Ms. Thorson on that date and undertook, albeit in the company of Drake, to deliver a "spoon" of amphetamines to her. He agrees that a sale was not then consummated due to a disagreement as to the quantity of the "spoon." Again, Jensen was the only witness who stated he queried the defendant relative to the purchase of a larger quantity of amphetamines. Both Drake, inferentially, and the defendant, directly, disputed this testimony. The defendant, however, did agree that he was present, heard the negotiations between Jensen and Drake, accompanied Drake to the recreation hall where he played pool while Drake telephoned his contact, indulged later with Drake in consuming some amphetamines, and undertook to transport Drake the next day, January 18, 1972, to the rendezvous with Jensen. Drake further testified

that it was conceivable, based on past experience, that the defendant anticipated receiving a portion of the proceeds of the sale.

Finally, with respect to defendant's claim that Ms. Thorson would confirm Jensen's use of amphetamines, the record reveals that Jensen admitted to such use on occasions to maintain his cover as a police agent and specifically conceded that he consumed some amphetamines at defendant's residence on January 14, 1972. Both Diane Cox and the defendant, premised on their own experiences with the use of amphetamines, testified as to Jensen's symptoms arising from his consumption on that evening.

Overlaying the foregoing evidentiary pattern rest the circumstances that Ms. Thorson seemingly was a recalcitrant witness, possibly facing an outstanding criminal charge in Walla Walla County, ostensibly evading service of process, and whose testimony in some measure would be subject to a potential Fifth Amendment claim of privilege. Added to these attendant factors is the fact that the record is silent as to the results, if any, of the continuing efforts to effect service upon Ms. Thorson by defendant's cocounsel in Seattle, thus leaving to speculation and conjecture the question of when Ms. Thorson could be served with process and under what conditions she would become available and testify.

Upon the basis of the record as a whole, we are convinced that any testimony Ms. Thorson could have offered would be merely cumulative to that evidence available and adduced at trial, and that such testimony would have had no qualitative impact or significant effect upon the ultimate result.

The Court of Appeals, in reversing the instant judgment and sentence, relied upon State v. Edwards, 68 Wn.2d 246, 412 P.2d 747 (1966). In that case, a motion for a continuance over the noon recess to permit defense counsel to ascertain why three defense witnesses had failed to respond to subpoenas was denied. We held this to be error of a consti-

tutional magnitude. The case is clearly distinguishable from the situation presented in this cause.

The judgment of the Court of Appeals is reversed. The judgment and sentence of the trial court is affirmed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.