# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70464-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVIS AARON BLALOCK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 22, 2014 |
| | ) | |

LAU, J. — Travis Blalock represented himself at his trial for failure to register as a sex offender. A jury convicted him and he appeals, arguing that the court abused its discretion in denying him a continuance on the eve of trial, holding a portion of the trial in his absence, and excluding his wife's proposed testimony as hearsay. Because the court did not abuse its discretion and because Blalock's pro se arguments lack merit, we affirm his conviction. We remand, however, for correction of a scrivener's error on the face of the judgment and sentence.

## FACTS

In 2004, Blalock was convicted of third degree rape of a child. An appendix to the judgment and sentence, which Blalock signed, informed him that he was required to register as a sex offender for a minimum of 10 years. This requirement included an

obligation to provide written notice of any change of address within 3 business days. Instruction 7.

In 2005 and 2006, Blalock signed forms from the King County Sherriff indicating that he had to register for 10 years and that "a change in supervision status . . . shall not relieve you of the duty to register or to register following a change in residence." Report of Proceedings (RP) (Apr. 11, 2013) at 60.

In 2007 and 2009, Blalock was convicted of attempted failure to register, a nonfelony, and felony failure to register. Appendices to the judgments and sentences notified Blalock of the sex offender registration requirements. Between 2004 and 2010, Blalock registered approximately 12 changes in his address.

In July, 2010, Blalock began living at the Seals Motel in Seattle. He registered the motel address with the King County Sheriff. That same month, he married his wife, Jennifer. His community corrections officer (CCO) told Jennifer that her children could not be around Blalock.

In the summer and fall of 2010, a King County Sheriff's Detective repeatedly attempted to contact Blalock at the Seals Motel without success. In December 2010, a detective learned that Blalock had moved out of the motel in late November. Blalock, in fact, had moved into Jennifer's Everett residence but had not registered the new address with the Snohomish County Sheriff's Office. Nor did he inform the King County Sheriff that he had moved out of King County.

On January 30, 2011, Snohomish County Sheriff's Deputies went to Jennifer's Everett home. They could see Blalock through the living room window. When they knocked on the door, Blalock left the living room. No one answered the door for several

minutes. Eventually, Jennifer opened the door and spoke to the deputies. After approximately 45 minutes, she allowed the deputies to look for Blalock in the house. They found damage to sheetrock in the attic separating Jennifer's unit from her neighbors'. They subsequently found and arrested Blalock in the adjoining unit.

On January 28, 2011, the State charged Blalock with felony failure to register as a sex offender. He was not in custody at that time and retained his own attorney. Over the next year and half, Blalock's attorney struggled with health issues and eventually told the court he could not continue with the case.

On October 18, 2012, nearly two years after the charging date, the court appointed a public defender to represent Blalock. At defense counsel's request, the court continued the trial date to January 15, 2013. On the trial date, Blalock told the court he was dissatisfied with his new counsel and moved to discharge her. He claimed she had done nothing and had yet to obtain his prior lawyer's notes and files. The court denied the motion and granted another defense continuance to March 4, 2013. In the meantime, Blalock was convicted of an unrelated violation of the Uniform Controlled Substance Act and jailed in Snohomish County.

On March 4, 2013, Blalock's counsel requested a continuance to April 8, 2013, in order to prepare for trial. Blalock requested an even longer continuance so that trial would begin after he and his wife were both out of custody in June. The court denied Blalock's motion but granted his counsel's.

On March 12, 2013, Blalock moved for permission to waive counsel and proceed pro se. The court advised him of the hazards of self-representation. It also warned him that there would be no "lawyer to stand by and give you advice" and that the court would

"likely not" continue the trial date again given how long the case had been pending. RP (Mar. 12, 2013) at 6-7. Blalock said he understood, and the court granted his request to proceed pro se.

Blalock immediately asked for a continuance, stating he needed more time "[n]ow that I'm going pro se [.]" RP (Mar. 12, 2013) at 16. The court reminded Blalock of its earlier warning that they would go to trial on April 8th if he decided to represent himself. The court denied the continuance but said Blalock could renew his motion once he reviewed everything and knew how much additional time, if any, he actually needed.

Blalock, who was then in the King County jail, asked to be transferred to the Snohomish County Jail pending trial. Both the court and the prosecutor advised him against transferring. The court said it might take longer to get the files and discovery to him if he were in Snohomish County. Similarly, the prosecutor stated, "[I]n order for Mr. Blalock to prepare between now and the 8th, I do have some concerns with him being transported back to Snohomish County . . . ." RP (Mar. 12, 2013) at 16. The court added, "I think [that's] right. I think you need to stay here, Mr. Blalock." Id. The court then stated:

> Do you understand that while you're incarcerated, it is far harder to get information, to make requests, to do any interviews you might decide you want to do? It's just a lot harder. And knowing that, do you still want to proceed pro se? Even though I might deny your motion for continuance and you might be going to trial on April 8th, do you still want to go pro se on that basis?

RP (Mar. 12, 2013) at 21 (emphasis added). Blalock said that he did, and the court denied the motion for a continuance. Blalock again requested standby counsel, which the court again denied.

-4-

On March 13, 2013, the prosecutor provided Blalock with discovery and his previous attorneys' notes. The prosecutor also put additional concerns regarding Blalock's transfer to Snohomish County on the record:

> [I]f the defendant is transported to the Snohomish County jail, there's not a guarantee that he's going to be allowed to keep all of the discovery in this matter that's going to be handed to him and amounts to all of that, and also there's no guarantee that he's going to be allowed to view the digital electronic discovery and all of those pieces of discovery that come with representing yourself.
> So I'm at this point asking for an order to strike the previous order entered allowing the defendant to be transported back to the Snohomish County jail because the only way I can guarantee he's allowed to adequately prepare for trial is if he's here in the King County jail. . . .
> . . .
> . . . I spoke with the Snohomish County jail yesterday after our hearing. They sort of raised the same concerns. . . . They said that they would . . . not guarantee that he would have access to that discovery because he's not pro se in their matter, he's simply just serving a sentence.

RP (Mar. 3, 2013) at 3-4.

Blalock disagreed, insisting that he would have access to everything he needed. The court ultimately denied the State's motion to strike the transfer to Snohomish County but warned Blalock again:

> I just want to state again that . . . this will make it more difficult for you to represent yourself with you in Snohomish County. You won't have . . . as easy access to the Office of Public Defense, which is the agency that initially provides funds for services other than an attorney, if you need expert witnesses or investigation services, it's going to be extremely difficult for you to get it in Snohomish County. And again, I'm telling you this case is not going to be continued because you're being transferred to Snohomish County.

RP (Mar. 3, 2013) at 9.

On April 8, 2013, Blalock appeared for trial and requested a continuance. He claimed he had not had access to the discovery and case files he requested from the Snohomish County Jail and needed more time to prepare and to interview several witnesses. The prosecutor told the court that all discovery had been turned over to

Blalock in open court before his transfer to Snohomish County, that the prosecutor had contacted Snohomish County to make sure that Blalock could take his materials into the jail with him, and that he was told there would be no problem. The prosecutor reminded the court that Blalock had been warned that he would not receive standby counsel or a continuance of the trial date if he decided to proceed pro se. The prosecutor also pointed out that two of the three witnesses Blalock wanted to interview had already been interviewed by the defense and would not be called by the State in any event and that the third witness was his wife.

Blalock presented a March 18, 2013 Snohomish County Jail kite (a written request) in which he requested access to a law library and his legal materials. The "response" portion of the kite stated that the request was denied because the King County prosecutor's office said that Blalock was not pro se. When asked if he had followed up with another kite, Blalock told the court that he had recently presented a second kite asking for his legal materials but received no response. That kite, however, was stamped "Received" on April 9, 2013—the day after Blalock requested a continuance.

The court declined to continue the trial and reminded Blalock of its earlier warnings:

> [T]his is, of course, why [the prosecutor] argued against your going back to Snohomish County – because of the confusion that can result between going from one jail to another. If you'd stayed here in the King County jail, then there wouldn't have been this problem in terms of being able to get your materials.
> . . .
> . . . [Y]ou introduced an additional difficulty into the system when you involve two jails instead of one.

-6-

RP (Apr. 8, 2013) at 20. The court also noted that the case was uncomplicated, implying that the preparation time should be minimal:

> You ought to have a very good idea of the facts in this case because the facts all relate to your whereabouts. I mean that's the whole issue is where you were and whether you registered or not, and that's all something you've got personal knowledge about, so it's not like it's going to be a big mystery to you what's going on here.

RP (Apr. 8, 2013) at 26. That afternoon, the court ordered the State to provide Blalock another copy of the discovery.

The next morning, Blalock refused to be transported to court. The court signed an order compelling his presence. When Blalock appeared, the court told him they were ready to proceed with pretrial motions and jury selection. Blalock became argumentative, accused the court of bias, and stated that both the judge and the deputy prosecutor were "going to have problems." Blalock demanded that he be returned to his cell. The court repeatedly told Blalock that they were ready to proceed and if he chose not to participate, the trial would proceed without him. Blalock said, "I'm gone." The court reiterated that he could choose to stay or leave. Blalock asked to be returned to his cell and proceeded to leave. The court made a finding on the record that Blalock "voluntarily absented himself from the proceedings." RP (Apr. 9, 2013) at 21. Jury selection ensued and trial commenced.

The next day, Blalock chose to return to court and participated in the remainder of his trial. He testified and conceded that he had repeatedly signed documents informing him that he had to register for 10 years and that a change in his supervision status would not affect that requirement. He claimed, however, that he did not read the documents. He also claimed that the Department of Corrections told him that his

registration period was less than 10 years and that he "was told a bunch of different things . . . ." RP (Apr. 11, 2013) at 68. On cross-examination, the prosecutor confronted him with forms he signed that included the words "I, Travis Blalock have read or have read to me" the registration requirements on the forms. RP (Apr. 11, 2013) at 69.

Blalock also testified that he asked his CCO at his last probation meeting, "Do I still have to register?" The CCO allegedly replied, "As far as DOC is concerned, you're off DOC." RP (Apr. 11, 2013) at 86. Blalock admitted, however, that he received information from his CCO at their last meeting indicating that he was still subject to the terms and conditions of his judgment and sentence.

The jury found Blalock guilty as charged. After trial, he filed pro se motions to dismiss and for a new trial. The court denied the motions. In written and oral findings, the court found in part that "[t]he defendant was timely provided discovery by the State" and had adequate time and opportunity to prepare for trial. Blalock appeals.

### DECISION

Blalock first contends the court abused its discretion in denying his motion for a continuance on the first day of trial. He contends the court's ruling violated his rights to self-representation, due process, and meaningful access to the courts. There was no abuse of discretion.

A continuance "rests within the sound discretion of the trial court, even when it is argued that a refusal to grant a continuance deprives a defendant of the right to due process and right to representation[.]" State v. Nguyen, 179 Wn. App. 271, 281, 319 P.3d 53 (2013). The court considers the totality of the circumstances, including whether

prior continuances have been granted, the need for an orderly procedure, due diligence, due process, and the possible impact on the result of the trial. State v. Downing, 151 Wn.2d 265, 273, 87 P.3d 1169 (2004) (citing State v. Eller, 84 Wn.2d 90, 95, 524 P.2d 242 (1974)). A court abuses its discretion only when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Woods, 143 Wn.2d 561, 579, 23 P.3d 1046 (2001). Reversal is not required absent "'a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied.'" State v. Deskins, 180 Wn.2d 68, 82, 322 P.3d 780 (2014) (quoting Eller, 84 Wn.2d at 95).

Here, Blalock's case had been pending for over 2 years and continued 10 times when he requested a continuance on the eve of trial. The court had repeatedly warned Blalock that transferring to the Snohomish County Jail would make trial preparation more difficult and that the court would not likely grant any more continuances. Despite these warnings and despite having nearly a month to prepare for trial, Blalock filed just one timely jail kite concerning his legal materials.

Blalock's alleged need to interview his wife and two State's witnesses also did not warrant a continuance. Blalock admitted he could call his wife from the jail, the State's witnesses had already been interviewed by Blalock's prior counsel, and the State did not intend to call those witnesses at trial in any event.

In addition, the court correctly noted that the case was relatively uncomplicated and essentially about matters within Blalock's personal knowledge. The court also found in its posttrial rulings that Blalock had adequate time and opportunity to prepare for trial. Blalock has not challenged the court's posttrial rulings or findings on appeal.

Considering all the circumstances, we cannot say the trial court abused its discretion in denying Blalock's motion for a continuance.

Even if we were to conclude otherwise, the result would be the same because Blalock cannot demonstrate prejudice. The State presented overwhelming evidence that Blalock knew he was required to register as a sex offender until 2014. Blalock fails to demonstrate any likelihood that a continuance would have changed the outcome of the trial.

Blalock next contends he did not validly waive his right to attend trial. Citing CrR 3.4(b), he contends he could only waive that right after the commencement of trial, which occurs when the jury panel is sworn for voir dire. State v. Crafton, 72 Wn. App. 98, 103, 863 P.2d 620 (1993) (for purposes of CrR 3.4(b), trial commences when jury panel is sworn). Blalock misreads the rule.

CrR 3.4(a) provides in part, "The defendant shall be present at . . . every stage of the trial including the empaneling of the jury . . . except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown." The phrase "except as otherwise provided by these rules" refers to CrR 3.4(b), which addresses a "defendant's voluntary absence after the trial has commenced in his or her presence . . . ." The phrase "excused . . . for good cause shown," however, is not limited to absences after the commencement of trial. And "good cause" includes "proceeding after the defendant has deliberately and clearly refused to be present." State v. Hammond, 121 Wn.2d 787, 793, 854 P.2d 637 (1993). Blalock's deliberate and unequivocal rejection of his right to attend trial provided good cause to proceed in his absence under CrR 3,4(a). Hammond, 121 Wn.2d at 793.

-10-

Blalock also contends the court abused its discretion when it excluded part of his wife Jennifer's proposed testimony as hearsay. Blalock told the court that Jennifer attended his last meeting with his CCO and would testify to the CCO's statements in that meeting. The State objected on hearsay grounds. The court correctly told Blalock that, if offered for the truth of the matter asserted, the proposed testimony was hearsay. ER 801(c). Blalock neither denied that the evidence was offered for that purpose nor offered a nonhearsay basis for its admission. Although Blalock suggests that a nonhearsay purpose should have been apparent from his own testimony, his testimony occurred after the court ruled on the proposed testimony. The court did not abuse its discretion in excluding the testimony.

Furthermore, any error in excluding the testimony was harmless. Although Blalock never described his wife's proposed testimony in any detail, it appears she would have echoed his testimony that the CCO answered the question, "Do I still have to register?" by saying, "As far as DOC is concerned, you're off DOC." Her testimony would have thus been cumulative. It also would undoubtedly have been discounted as coming from a witness with obvious bias. In sum, because Jennifer's testimony would have been cumulative evidence from a witness with obvious bias, any error was harmless under either the nonconstitutional or constitutional error standards. See Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L. REV. 277, 319 (1995/96) ("Regardless of the announced standard of review for harmless error, Washington has a long history of ruling error harmless if

the evidence admitted or excluded was merely cumulative.").[1]

Last, Blalock contends, and the State concedes, that his judgment and sentence erroneously recites the charging period from the original information, not the charging period in the amended information. Accordingly, we remand for correction of this scrivener's error. In re Pers. Restraint of Mayer, 128 Wn. App. 694, 701, 117 P.3d 353 (2005).

Blalock raises a number of issues in his pro se statement of additional grounds for review.[2] None has merit.

He argues that the court violated his right to counsel of choice when, prior to his decision to proceed pro se, it denied his request for new counsel. But as the United States Supreme Court explained in United States v. Gonzalez-Lopez, 548 U.S. 140, 151, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006), "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." See also State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010); State v. Sanchez, 171 Wn. App. 518, 543, 288 P.3d 351 (2012). It is undisputed that Blalock was represented by appointed counsel when he requested a new lawyer and that he did not indicate he had the ability to obtain private counsel. Accordingly, he was not entitled to counsel of choice. To the extent he suggests he was entitled to new counsel due to a conflict

---

[1] Contrary to Blalock's assertions, the court did not nullify his testimony regarding the CCO's statements when it sustained the State's objection to his slightly different version of the statements in closing argument. That conclusion is supported by the fact that the prosecutor continued to attack Blalock's allegedly nullified testimony in rebuttal.

[2] Blalock's arguments regarding the denial of his motion for a continuance to access legal materials and interview witnesses, and the decision to proceed with a portion of the trial in his absence, are duplicative of his counsel's arguments and are resolved by our discussion above.

and/or ineffective assistance, his conclusory assertions are insufficient under RAP 10.10(c) ("the appellate court will not consider" an additional ground for review "if it does not inform the court of the nature and occurrence" of the alleged error.).

Blalock argues that the court erred in denying his request for standby counsel. A pro se defendant has no absolute right to standby counsel and we review a decision regarding standby counsel for abuse of discretion. State v. DeWeese, 117 Wn.2d 369, 379, 816 P.2d 1 (1991); Locks v. Summer, 703 F.2d 403, 407-08 (9th Cir. 1983). Here, the court informed Blalock when he elected to proceed pro se that "you will not get another lawyer to stand by and give you advice. Do you understand all that?" RP (Mar. 12, 2013) at 6. Despite answering, "Yes" to the court's question, Blalock requested standby counsel later in the same hearing. The court did not abuse its discretion in denying that request.[3]

Next, Blalock contends he was "denied access to law library due to prosecutor misconduct." SAG at 5 (capitalization omitted). He correctly notes that when Snohomish County Jail officials contacted the prosecutor's office and inquired whether Blalock was pro se, the prosecutor's office told them he was represented by counsel. This mistake evidently resulted in jail officials denying Blalock's initial request for access to legal materials. At the April 8, 2013 hearing, the court explained, and the prosecutor confirmed, that the jail called the main line to the prosecutor's office, did not speak to the prosecutor, and therefore received incorrect information from staff. The court further explained that the incorrect information was likely due to the fact that "it takes time to

---

[3] Blalock contends he also requested standby counsel on April 8, 2013, but no such request appears in the transcripts for that date.

get the records updated" to reflect a change in a defendant's representation. RP (Apr. 8, 2013) at 19. Nothing in the record supports Blalock's claim of prosecutorial misconduct.[4]

Blalock argues that he was entitled to change his mind with respect to self-representation and that the trial court erred in denying his mid-trial request for counsel. The law is to the contrary. After a waiver of counsel, "the trial court is not obliged to appoint, or reappoint, counsel on the demand of the defendant. The matter is wholly within the trial court's discretion." DeWeese, 117 Wn.2d at 376-79. Blalock sought to abandon self-representation and have counsel appointed at the end of the State's case. Citing DeWeese and noting that they were "in the middle of the case," the court denied his request. RP (Apr. 10, 2013) at 110. There was no abuse of discretion.

Blalock also complains that the prosecutor mentioned his underlying sex offense from 2004 "over and over to the jury throughout the trial, to the point where it felt like I was being tried for and under my past conviction." SAG at 13. He fails, however, to adequately describe "the nature and occurrence" of any error. RAP 10.10(c). He makes no attempt to identify when these alleged remarks occurred, and, with one exception, he does not claim to have objected to them. He also fails to identify any relevant legal theory in support of his argument. Instead, he cites inapposite authority relating to variances between a charged crime and the crime of conviction.

In any event, given the elements of the charged offense, the prosecutor was entitled to reference Blalock's underlying offense. The court's instructions required the

---

[4] We note that the court reminded Blalock below, and he conceded, that the court had given him a copy of his waiver of counsel to show the jail. Blalock claimed he showed the waiver to the jail.

State to prove, among other things, that Blalock had previously "been convicted of a felony sex offense which requires [him] to register as a sex offender in the State of Washington[.]" Instruction 8. Blalock's 2004 conviction was the State's proof of that element. In addition, the appendix to the 2004 judgment and sentence was evidence relevant to Blalock's knowledge of the registration requirements. The prosecutor thus had several valid bases to reference the conviction.

To the extent Blalock contends the references prejudiced his defense, we note the jury was instructed that Blalock's underlying conviction was "not evidence of the defendant's guilt, except insofar as the conviction itself establishes an element of an offense with which he is charged, or the conviction tends to prove the defendant's knowledge of his obligation to register." Instruction 5. We presume the jury follows its instructions. State v. Foster, 135 Wn.2d 441, 472, 957 P.2d 712 (1998).

Last, Blalock contends he was denied his constitutional right to be present during jury selection and that this resulted in the prosecutor picking a jury favoring the prosecution. As previously noted, however, Blalock waived his right to attend that portion of his trial. And contrary to Blalock's assertions, the court informed him they would be picking a jury the day he chose not to attend trial.

We affirm the conviction but remand solely for correction of a scrivener's error on the judgment and sentence.

WE CONCUR:

-15-