2016 MAR -7 AM 9:38

COURT OF APPEALS
STATE OF WASHINGTON

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,       )
                           )   DIVISION ONE
             Respondent,   )
                           )   No. 72607-2-I
        v.                 )
                           )   UNPUBLISHED OPINION
SIRAJ HASSAN HAJI-SOMO,    )
                           )
             Appellant.    )   FILED: March 7, 2016
_____)

DWYER, J. — A jury convicted Siraj Haji-Somo of one count of residential burglary with a special allegation finding that the victim was present in the residence at the time of the offense. On appeal, Haji-Somo contends both that he was denied his constitutional right to self-representation and that the trial court's denial of his motion for a continuance violated his right to present a defense. Finding no error, we affirm.

I

On May 21, 2014, approximately two and one-half months before trial, Catherine Elliott, Haji-Somo's first appointed counsel, notified the court that Haji-Somo wished to request the court to discharge her as his attorney. When the trial court inquired as to the nature of Haji-Somo's motion, he indicated that it "would be me representing myself." The following exchange occurred:

THE COURT: And what are your reasons for wanting to do that?

THE DEFENDANT: I just feel the need to speak for myself. Just going through a lot and just kind of really need to get this – get this taken care of because I can't afford for something like this to ruin my life because I'm at a good point in life where I need to be (inaudible, soft-spoken.) And so I just – I just need somebody to talk to, somebody I could trust, get comfortable with, somebody I can – you know, somebody I can – that's not understanding me, so I would prefer someone else, not that Elliott person (phonetic). Elliot is a great attorney, don't get me wrong, but I feel I need to have somebody that understands (inaudible, soft-spoken).

THE COURT: Okay. So you're actually asking for a different attorney. You're not asking to represent yourself; is that correct?

THE DEFENDANT: Actually, I want to represent myself, but I'm – because I might be short on cash and so I'm not thinking about getting an attorney. I'm just not sure. I haven't decided. That's the thing.

THE COURT: Okay. So –

THE DEFENDANT: Nothing decided all the way, but I need an attorney, but I'm – I'm more comfortable representing myself.

THE COURT: All right. So those are two very different things. Right?

THE DEFENDANT: Yeah.

THE COURT: Really different. Either you have an attorney or you don't have an attorney.

THE DEFENDANT: Okay.

THE COURT: And so –

THE DEFENDANT: Well, I'll just – I'll just represent myself. I'll go with representing myself.

Seeking further clarification, the trial court asked Elliott her understanding of Haji-Somo's position. Elliott stated,

My understanding from Mr. Haji-Somo is that he specifically does not want me representing him, and then there remains the question of whether he wants to represent himself or whether he wants another attorney.

And if I'm wrong on that, I would ask for some clarification.

And from my view of things, I don't feel that I have been able to adequately represent him in my role with him, specifically my obligations to him as his attorney due to the fact that we – he does not trust me, and he does not listen to my advice, and we think more often than not end up in unproductive conversations.

2

. . . .

So I don't know what to make of it, Your Honor, but I guess from my perspective, the first question is whether I should be on the case and then maybe the second question is whether it should be another attorney or himself. And maybe that should be the subject of another motion. I don't – I don't know.

Haji-Somo made no objection to this characterization of the circumstance. The trial court, noting that the request before the court was to discharge counsel, expressed concern about Haji-Somo's uncertainty as to whether he was requesting appointment of another attorney or whether he was requesting to proceed pro se. Haji-Somo reiterated his objection to Elliott's representation, specifically referencing the continuing communication issues he was experiencing with her.[1]

After hearing from both Haji-Somo and Elliott, the trial court granted Haji-Somo's motion to discharge defense counsel but did not rule on whether Haji-Somo would proceed pro se at that point. On the matter of proceeding pro se, the trial court informed Haji-Somo, "I think you need to be able to speak with someone, and we're going to need to confirm new counsel and give you the opportunity to do that."

Anna Brusanowski was appointed as Haji-Somo's new counsel. She first appeared with Haji-Somo at a June 2 hearing. At that time, Brusanowski

---

[1] At the May 21 hearing, Haji-Somo referenced miscommunication with Elliott regarding which date he was required to appear in court. Specifically, Haji-Somo stated that Elliott told him to report to the courthouse for the omnibus hearing on the wrong day. As a result, Haji-Somo missed the omnibus hearing and the trial court issued a warrant. Haji-Somo expressed his frustration, stating,

Like, that's a misunderstanding, and I'm not – I'm not trying to work with someone that's like that. I want somebody who's going to keep me updated because everything that goes on with how the whole case is going, because if we're not keeping in touch, there's no – what case – what case do we have with each other.

3

informed the court that Haji-Somo did not want a court appointed attorney and was in the process of hiring a private attorney. Haji-Somo did not renew his request to proceed pro se at this hearing.

With Brusanowski still representing Haji-Somo, trial began on August 7, 2014. Various pretrial motions, a discussion about ongoing negotiations, and voir dire with an initial jury panel all took place.[2] Proceedings continued on August 11 with the State indicating that it had presented Haji-Somo with a new plea offer, which included a recommendation for the imposition of a deferred sentence. After consulting with Brusanowski, Haji-Somo rejected the offer. Brusanowski then informed the court of her client's rejection of the offer, and asked the court for a continuance of "at most a week" to gather additional evidence. Brusanowski indicated:

> [M]y client just now informed me that he does have witnesses that he would like to call in furtherance of his defense. Unfortunately he did not discuss possible witnesses with me previously. Several times I approached him about whether or not he had witnesses, and he did not, and at this point he declares that he does.
> For that reason, we're asking the Court to grant us a brief continuance so that I can gather the names and contact information, quickly interview them, and so that I can forward that information to the prosecutor.[3]

The State objected to the continuance request. The trial court denied the motion as untimely because pretrial rulings had been completed and trial of the

---

[2] Brusanowski indicated that the defense would likely present no witnesses, other than the defendant, but might call defense investigator John Hayes to testify.

[3] Brusanowski continued, "I just wanted to emphasize the fact that from my overview of the state and what I perceive now as being my client's defense – or line of defense, I wanted to declare that I do believe that these witnesses would be necessary to further that defense, and so they would not be simply frivolous witnesses with information that would not have a significant impact on my client's defense."

4

matter had begun. Moreover, the trial court noted that Haji-Somo had been given ample time to speak with his attorney about possible witnesses before trial, and emphasized that there was no indication that these were newly discovered witnesses or that the substance of the trial had changed in any manner as a result of any rulings made.

After a recess, a substitute prosecutor appeared on behalf of the State and informed the trial court that the assigned prosecutor had fallen sick over lunch, and that the substitute prosecutor would stand in for the hardship portion of voir dire only. Defense counsel did not object to the substitution of counsel for this limited purpose.

Later that day, defense counsel indicated that Haji-Somo wished to make a motion to proceed pro se. When the trial court asked why Haji-Somo was bringing his request to proceed pro se after trial of the matter had begun, Haji-Somo's response was largely inaudible.[4] However, the context of his reply indicates dissatisfaction with defense counsel's decision not to object to the substitute prosecutor's appearance for the hardship portion of voir dire.[5] The trial court denied Haji-Somo's motion as "very untimely," stating,

> I'm not hearing that there is a breakdown in communication, that there are any conflicts regarding that communication, that I feel it's unfounded. I feel it's untimely, and, quite frankly, given some of the questions posed to the Court in the course of proceedings today, I'm concerned that it's made without the general understanding of what the consequences will be.

---

[4] "Your Honor, I object had when she said she wants (inaudible, speaking softly and not into microphone) prosecutor. I understood (inaudible, speaking softly and not into a microphone)."

[5] The trial court further indicated that had such an objection been interposed, it would have been denied.

Near the end of the day's proceedings, Haji-Somo made an additional request to discharge counsel and have new counsel appointed because he felt that his questions were not being answered and that he was not being well-represented. The court disagreed and denied Haji-Somo's motion to discharge counsel. Brusanowski continued to represent Haji-Somo throughout the trial with no additional objections.

Haji-Somo was convicted as charged and the jury found the special allegation proved. The trial court imposed a low-end standard range sentence of three months on work release or electronic home detention, with 30 days converted to community service. Haji-Somo now appeals.

II

Haji-Somo first contends that his constitutional right to self-representation was violated. This is so, he asserts, because the trial court failed to make a meaningful inquiry into his initial request to proceed pro se. We disagree.

A defendant in a criminal prosecution has a right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22 (amend. 10). This right to counsel may be waived, but such a waiver must be "knowing, voluntary and intelligent." City of Bellevue v. Acrey, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984) (citing Argersinger v. Hamlin, 407 U.S. 25, 92 S. Ct. 2006, 32 L.Ed.2d 530 (1972)). "If counsel is properly waived, a criminal defendant has a right to self-representation." Acrey, 103 Wn.2d at 209 (citing WASH. CONST. art. 1, § 22 (amend. 10); U.S. CONST. amend. VI; Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)).

6

The right to proceed pro se, however, is not absolute. State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010) (citing State v. Woods, 143 Wn.2d 561, 586, 23 P.3d 1046 (2001)). "When a defendant requests pro se status, the trial court must determine whether the request is unequivocal and timely." Madsen, 168 Wn.2d at 504 (citing State v. Stenson, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997)). If the request is unequivocal and timely, the court must then determine if the request is voluntary, knowing, and intelligent. Madsen, 168 Wn.2d at 504 (citing Faretta, 422 U.S. at 835; State v. Stegall, 124 Wn.2d 719, 881 P.2d 979 (1994)). When making these determinations, the court may defer ruling on the motion if it is "reasonably unprepared to immediately respond to the request." Madsen, 168 Wn.2d at 504. Moreover, courts are required to "'indulge in every reasonable presumption' against a defendant's waiver of his or her right to counsel." In re Det. of Turay, 139 Wn.2d 379, 396, 986 P.2d 790 (1999) (quoting Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)).

We review the denial of a request for pro se status under an abuse of discretion standard. Madsen, 168 Wn.2d at 504 (citing State v. Hemenway, 122 Wn. App. 787, 792, 95 P.3d 408 (2004)). "Discretion is abused if a decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" Madsen, 168 Wn.2d at 504 (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

It is axiomatic that, in order "[t]o protect defendants from making capricious waivers of counsel and to protect trial courts from manipulative

vacillations by defendants regarding representation, the defendant's request to proceed pro se must be unequivocal." Stenson, 132 Wn.2d at 740. This means that the request must be unequivocal "in the context of the record as a whole." Stenson, 132 Wn.2d at 741-42 (citing State v. Luvene, 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995)). "While a request to proceed pro se as an alternative to substitution of new counsel does not necessarily make the request equivocal, such a request may be an indication to the trial court, in light of the whole record, that the request is not unequivocal." Stenson, 132 Wn.2d at 740-41 (citation omitted).

Haji-Somo characterizes his request to proceed pro se as two separate requests. He assigns error only to what he terms the trial court's failure to further inquire into his original request to proceed pro se until after the trial had commenced.

Haji-Somo's original request to proceed pro se, although timely, was equivocal. When asked his reasons for his motion to proceed pro se, Haji-Somo stated that he needed somebody to talk to, somebody that he could trust and feel comfortable with. Although Haji-Somo indicated that he wanted to represent himself, he acknowledged, "I'm just not sure. I haven't decided. That's the thing. . . . Nothing decided all the way, but I need an attorney, but I'm – I'm more comfortable representing myself." Haji-Somo's uncertainty is reinforced by his subsequent utterances and Elliott's statements that Haji-Somo's objection was to her representation, specifically, based on a perceived continuing miscommunication.

We review each motion to proceed pro se independently to determine whether the requirements for pro se status were met. Madsen, 168 Wn.2d at 505. Upon making his May 21 motion to proceed pro se, Haji-Somo expressed uncertainty as to whether he desired a different attorney or no attorney at all. Haji-Somo's alternate request for counsel is an indication that his request was not unequivocal. Stenson, 132 Wn.2d at 740-41. Haji-Somo's uncertainty, coupled with Elliott's understanding that Haji-Somo did not want her as his attorney, provide a sufficient basis for the trial court to rule that the original request was equivocal. Thus, the trial court would have been correct in denying Haji-Somo's motion to proceed pro se at the May 21 proceeding.

Furthermore, Haji-Somo's reliance on Madsen is misplaced. Defendant Madsen was charged with three counts of felony violation of a court order. Madsen, 168 Wn.2d at 501. On January 24, 2006, after his privately retained counsel withdrew, Madsen personally moved to proceed pro se stating that "he believed he 'could resolve the whole issue.'" Madsen, 168 Wn.2d at 501. The trial court, however, deferred ruling on the request, stating that it would be "'happy to hear the motion'" after Madsen had a chance to talk with new counsel. Madsen, 168 Wn.2d at 501. Madsen renewed his request on March 7, almost two months before trial, indicating that he wished to proceed pro se and stating that, "'Under Article I[, Section] 22 I have a right to represent myself.'" Madsen, 168 Wn.2d at 501 (alteration in original). After Madsen's counsel questioned his competency to represent himself, Madsen reiterated, "'I am gonna revert to my constitutional rights, Washington State constitutional rights, Article 1, Subsection

22, I have a right to represent myself and that's what I'm going to move forward with doing.'" Madsen, 168 Wn.2d at 501. The trial court, however, again deferred ruling on the motion to proceed pro se, which was then renewed on May 2, the day before jury selection. Madsen, 168 Wn.2d at 502, 508. It was only at this point that the court denied the motion as untimely. Madsen, 168 Wn.2d at 502, 508.

On appeal, the Washington Supreme Court held that the denial of Madsen's March 7 motion was an abuse of discretion. Madsen, 168 Wn.2d at 509. The court first noted that the deferral of a ruling on the January 24 motion was not an abuse of discretion, as the trial court may have reasonably been unprepared to immediately consider Madsen's motion to proceed pro se. Madsen, 168 Wn.2d at 506. However, the court held that the trial court abused its discretion by failing to grant Madsen pro se status after his second request, which was "unequivocal, timely, voluntary, knowing, and intelligent." Madsen, 168 Wn.2d at 506. The court stated that even if the trial court had concerns regarding Madsen's competency when the March 7 motion was made, it should have ordered a competency hearing, rather than simply deferring the ruling for a second time. Madsen, 168 Wn.2d at 510. Because the court held that Madsen's March 7 motion to proceed pro se was *independently valid*, improperly deferred until May 2, and ultimately denied without just cause, reversal was required. Madsen, 168 Wn.2d at 510.

The facts herein are much different. While the trial court conceivably had notice of the fact that Haji-Somo was considering proceeding pro se on May 21,

10

his equivocal request and subsequent actions indicated that he had abandoned any intent to do so. After discharging the first appointed counsel, the trial court appointed new counsel in order to allow Haji-Somo the opportunity to consider whether he actually wished to proceed pro se.[6] However, Haji-Somo did not renew his motion to proceed pro se after speaking with Brusanowski but, rather, indicated that he was considering hiring a private defense attorney known to his family. At no point before trial began did Haji-Somo retain private counsel or move to discharge Brusanowski. Unlike the defendant in Madsen, who *unequivocally* and *timely* asserted his right to self-representation on two occasions (three and one-half and two months before trial began), Haji-Somo renewed his motion to proceed pro se for the first time on the second day of trial.[7]

Because it was reasonable for the trial court to defer ruling on Haji-Somo's equivocal May 21 motion to proceed pro se in order to give him the opportunity to consult with newly appointed counsel, the trial court did not abuse its discretion

---

[6] Moreover, the trial court's statement that it was "not going to make a decision" on Haji-Somo's original, equivocal, motion to proceed pro se was effectively an invitation to renew the motion after consultation with newly appointed counsel. Haji-Somo did not do so. This deferral was proper and served as the equivalent of a denial of his first motion to proceed pro se. Madsen, 168 Wn.2d at 506.

[7] Indeed, even at this point, it is unclear whether Haji-Somo's objection was to being represented by his appointed counsel or being represented at all. Haji-Somo's response is undecipherable due to deficiencies in the verbatim report of proceedings. However, it appears to amount to an objection to counsel's failure to object to a limited substitution of prosecutors:

THE COURT: And can you give me some understanding of why you would like to do that [proceed pro se] and why you are bringing your request to the Court at this tight [sic]?

THE DEFENDANT: Your Honor, I object had when she said she wants (inaudible), speaking softly and not into a microphone) prosecutor. I understood (inaudible, speaking softly and not into a microphone.)

THE COURT: Okay. Anything else, Mr. Haji-Somo?

THE DEFENDANT: No, Your Honor.

by denying Haji-Somo's request as untimely when he did not renew it until the second day of trial.

III

Haji-Somo next contends that his right to present a defense was violated. This is so, he asserts, because the trial court abused its discretion when it denied Haji-Somo's request for a week-long continuance in order to secure the testimony of necessary defense witnesses. This contention is unavailing.

In criminal cases, "the decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (citing State v. Miles, 77 Wn.2d 593, 597, 464 P.2d 723 (1970)). Thus, we review a trial court's decision to deny a motion for a continuance under an abuse of discretion standard. Downing, 151 Wn.2d at 272 (citing State v. Hurd, 127 Wn.2d 592, 594, 902 P.2d 651 (1995); Skagit Ry. & Lumber Co. v. Cole, 2 Wash. 57, 62, 65, 25 P. 1077 (1891)). We will not disturb the trial court's decision unless the appellant "makes 'a clear showing . . . [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Downing, 151 Wn.2d at 272-73 (alterations in original) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Moreover, "even where the denial of a motion for continuance is alleged to have deprived a criminal defendant of his or her constitutional right to compulsory process, the decision to deny a continuance will be reversed only on a showing that the accused was prejudiced by the denial and/or that the result of the trial

12

would likely have been different had the continuance not been denied." State v. Tatum, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994) (citing State v. Eller, 84 Wn.2d 90, 95-96, 524 P.2d 242 (1974)).

As our Supreme Court has noted, "there are no mechanical tests for deciding when the denial of a continuance violates due process, inhibits a defense, or conceivably projects a different result; and, that the answer must be found in the circumstances present in the particular case." Eller, 84 Wn.2d at 96 (citing State v. Cadena, 74 Wn.2d 185, 443 P.2d 826 (1968)). "In exercising discretion to grant or deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure." Downing, 151 Wn.2d at 273 (citing Eller, 84 Wn.2d at 95; RCW 10.46.080; CrR 3.3(f)). Additionally, good faith is an essential component of an application for a continuance. State v. Edwards, 68 Wn.2d 246, 258, 412 P.2d 747 (1966). "If it is manifest that the request for recess or continuance is designed to delay, harry, or obstruct the orderly process of the trial, or to take the prosecution by surprise, then the court can justifiably in the exercise of its discretion deny it." Edwards, 68 Wn.2d at 258.

Prior to jury selection, defense counsel informed the State and the trial court that the defense did not plan to call any witnesses beyond the defendant. Nevertheless, Haji-Somo requested a continuance on the second day of trial, after all of the pretrial rulings were completed and jury selection had begun. The trial court denied Haji-Somo's motion on the ground that a substantial period of time had elapsed, giving the defense ample time to prepare its case.

13

Additionally, the trial court noted that there was no indication that these witnesses were newly discovered or that the facts and substance of the trial had changed as a result of the rulings on the various pretrial motions. Accordingly, the trial court denied Haji-Somo's motion for a continuance as untimely.

Haji-Somo has not clearly demonstrated that the trial court's ruling was "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Downing, 151 Wn.2d at 272-73 (quoting Carroll, 79 Wn.2d at 26). His attorney, Brusanowski, commenced her representation on June 2. Trial of the matter began over two months later on August 7. During this period, Brusanowski stated, despite her repeated requests, Haji-Somo disclosed no witnesses that he wished to call in his defense. Notwithstanding that Haji-Somo was arrested in the presence of other people,[8] he negatively responded to defense counsel's repeated questioning and never disclosed the identity of these individuals to his attorney until the second day of trial. Thus, defense counsel's inability to investigate or interview these witnesses was due to Haji-Somo's own dilatory conduct. Because the trial court properly accounted for (1) Haji-Somo's lack of diligence, (2) the fact that these were not newly discovered witnesses, and (3) that the facts of the matter had not changed as a result of pretrial rulings, it did not abuse its discretion by denying the request for a continuance.

Even had the trial court's denial of Haji-Somo's motion for a continuance rested on improper grounds, Haji-Somo has not demonstrated that he was

---

[8] Arresting officer James Sturgill testified that there were several people in the apartment when the arrest was made. One individual answered the door, another was sleeping or passed out on the living room floor, and a third person was sleeping in the bedroom. Haji-Somo was initially contacted by officers in a locked bathroom in the apartment.

prejudiced by the denial or that the result of the trial would likely have been different had the continuance been granted. Although defense counsel stated that she believed that the newly disclosed witnesses would be necessary to further Haji-Somo's defense,[9] she did not indicate the identity of these witnesses or the substance of their testimony. Nor did defense counsel explain how these witnesses purportedly supported the defense's theory of the case.[10] Because the trial court record is silent as to how these witnesses would have testified at trial, prejudice has not been established.

The trial court did not abuse its discretion in denying defense counsel's belated motion for a week-long continuance on the second day of trial.

Affirmed.

_Duyn, J._

We concur:

_Verellen, J._

_Leach, J._

---

[9] The defense theory of the case was that Haji-Somo's excessive drinking the prior evening negated his intent to commit the burglary. On appeal, Haji-Somo argues that these witnesses would have, allegedly, verified Haji-Somo's mental state the prior evening.

[10] Indeed, in requesting the continuance, Brusanowski merely indicated that "I wanted to declare that I do believe that these witnesses would be necessary to further that defense, and so they would not be simply frivolous witnesses with information that would not have a significant impact on my client's defense."