FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 JAN 14 AM 9: 31

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>         Respondent,<br><br>     v.<br><br>JOHN CANLAS LIAM,<br><br>         Appellant. | DIVISION ONE<br><br>No. 77148-5-I<br><br>UNPUBLISHED OPINION<br><br>FILED: January 14, 2019 |

DWYER, J. — John Liam was charged with two counts of child molestation in the first degree. However, following trial, a jury found him guilty of only the lesser included offense of assault in the fourth degree on both counts. He was sentenced to 364 days in jail on count one and 364 days in jail on count two. The sentencing court suspended the sentence for count two on the condition that Liam obtain a sexual deviancy evaluation and comply with all resulting treatment recommendations. On appeal, Liam asserts that the court's decision to condition the suspended sentence on the completion of a sexual deviancy evaluation constituted an abuse of discretion. We find no abuse of discretion and affirm.

I

Liam, then 38 years old, moved in with D.A.G. and her mother when D.A.G. was just 5 years old.[1] For much of the time Liam lived with them,

---

[1] D.A.G.'s parents separated when she was two years old. It was at that time that D.A.G.'s mother began to develop a romantic relationship with Liam, leading to his eventual move into D.A.G.'s home.

D.A.G.'s mother worked the night shift, leaving Liam alone with D.A.G. for long periods of time.

D.A.G. is a bright student who normally focuses diligently on her school work. However, on April 20, 2016, one of her teachers noticed that D.A.G. seemed particularly distracted and sad. Upon further inquiry by her teacher, D.A.G., through tears, disclosed that she was upset due to certain incidents that had been happening at her home. Subsequently, D.A.G.'s teacher reported what D.A.G. had told her to Child Protective Services.

Following a police investigation, Liam was charged with two counts of child molestation in the first degree for molesting D.A.G.[2] D.A.G., who was in fifth grade at the time of the trial, testified that while Liam lived with her and her mother he would say mean things to her and touch her inappropriately. D.A.G. explained that Liam pinched her butt and other places on her body, and that he had done so starting as early as when she was in kindergarten. She further testified that Liam touched her vagina on two separate occasions.

According to D.A.G., the first incident occurred on a night when she was alone at home with Liam. She testified that she was sleeping when the feeling of something against her inner thighs woke her. She felt that her pants and

---

[2] The crime of child molestation in the first degree is set forth in RCW 9A.44.083, which states:

> A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.083(1).

Sexual contact, as used therein, is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Child molestation in the first degree is a felony offense. RCW 9A.44.083(2).

underwear were no longer on and, looking down, saw that Liam's head was between her legs. D.A.G. felt something touching her vagina. She testified that Liam asked her if she liked it. Terrified, D.A.G. pretended not to hear him. When asked why she did not immediately tell her mother about the incident, D.A.G. explained that she was afraid of Liam and thought that her mother would not believe her because she liked Liam.

D.A.G. further testified to a second incident that occurred one night when D.A.G. had climbed into bed with her mother and Liam. Everything was fine until her mother got up and went into the bathroom, leaving D.A.G. alone with Liam. Once her mother was gone, Liam pulled D.A.G. close to him, stuck his hand down her pants, and touched her vagina. Liam stopped touching her when D.A.G.'s mother came back from the bathroom.

Although Liam did not testify at the trial, the jury was presented with two audio-visual recordings of interviews Liam voluntarily gave to the police during their investigation. During the interviews Liam denied ever abusing D.A.G. Liam claimed D.A.G. was making things up because she was mad at him for fighting with her mother.

During the interviews, Liam explained that D.A.G. had severe eczema when she was younger and that he had to give her baths and rub Vaseline all over her body. Specifically, D.A.G.'s eczema would result in her developing "scales" between her legs upon which Liam would have to rub Vaseline. When asked whether this meant her vagina, Liam initially claimed he only ever "wiped around the edges," but then later admitted to touching D.A.G.'s vagina.

3

According to Liam, this happened by accident, and he failed to immediately disclose the incident because he "totally forgot about it."

Additionally, Liam admitted to putting his hands down D.A.G.'s pants a few times when she was sleeping, although he again asserted that it was solely to rub Vaseline on her eczema. He also explained during one of the interviews that he could see images of himself doing the things D.A.G. alleged he did, specifically that he was thinking about putting his face near D.A.G.'s vagina. He professed to be "disgusted to myself" at his own thoughts, explaining that he had them because "it's like how you supposed to figure these out without having thoughts, right?"

Following the close of evidence, Liam requested, and the judge agreed to give, a to-convict instruction for each count not only for the crime of child molestation, but also for the lesser included crime of assault in the fourth degree.[3] The jury acquitted Liam of the charge of child molestation in the first degree, instead finding him guilty of assault in the fourth degree, on both counts. At sentencing, Liam was sentenced to 364 days in the county jail on count one and 364 days in the county jail on count two. However, the judge suspended the sentence on count two and ordered that Liam instead be placed on unsupervised probation for two years with the requirement that he complete a sexual deviancy

---

[3] Assault in the fourth degree is a lesser included offense of the crime of child molestation in the first degree. See State v. Stevens, 158 Wn.2d 304, 310-12, 143 P.3d 817 (2006). Assault in the fourth degree is a gross misdemeanor offense statutorily defined as an assault not amounting to an assault in the first, second, or third degree. RCW 9A.36.041. Washington uses the common law definition of assault. Stevens, 158 Wn.2d at 310-11. Herein, the jury was provided with the following jury instruction defining assault: "An assault is an intentional touching of another person that is harmful or offensive. A touching is offensive if the touching would offend an ordinary person who is not unduly sensitive."

4

evaluation within 30 days of his release from jail and comply with all resulting treatment recommendations. Liam assigns error to the imposition of the sexual deviancy evaluation and treatment requirement as a condition of his suspended sentence and probation.

II

Liam's contention on appeal is that the sentencing court erred by conditioning the suspension of his sentence on count two upon the completion of a sexual deviancy evaluation. Specifically, Liam asserts that the sentencing court abused its discretion because such a condition was not reasonably related to preventing his future commission of crimes. We disagree.

"Our trial courts have great discretion in imposing sentences within the statutory limits for misdemeanors and gross misdemeanors." State v. Anderson, 151 Wn. App. 396, 402, 212 P.3d 591 (2009). We review sentencing conditions for an abuse of that discretion. State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). A court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or reasons. Riley, 121 Wn.2d at 37. Indeed, "reasonableness is the test of the propriety of a condition of probation." State v. Barklind, 12 Wn. App. 818, 823, 532 P.2d 633 (1975) (citing State v. Langford, 12 Wn. App. 228, 529 P.2d 839 (1974)), aff'd, 87 Wn.2d 814, 557 P.2d 314 (1976).

The superior court's authority to grant probation pursuant to a suspended sentence is codified at RCW 9.95.210, which states:

> [I]n granting probation, the superior court may suspend the imposition or the execution of the sentence and may direct that the

suspension may continue upon such conditions and for such time as it shall designate, not exceeding the maximum term of sentence or two years, whichever is longer.

RCW 9.95.210(1)(a).

For felony crimes, conditions of probation must also comply with the requirements of the Sentencing Reform Act of 1981 (SRA), codified at chapter 9.94A RCW. Pursuant to the SRA, a sentencing court is limited to imposing conditions that relate directly to the crime for which the offender was convicted. See State v. Parramore, 53 Wn. App. 527, 531, 768 P.2d 530 (1989) (reversing the sentencing condition of a urinalysis test because such a test was not directly related to the defendant's conviction for the delivery of marijuana); see also RCW 9.94A.030(10); RCW 9.94A.505(9). However, the SRA does not apply to individuals who have been convicted solely of misdemeanors or gross misdemeanors. See RCW 9.94A.010. For misdemeanants,

> [p]robation outside the SRA is not a matter of right but a matter of grace, privilege, or clemency "granted to the deserving, and withheld from the undeserving, as sound official discretion may dictate." See State v. Farmer, 39 Wn.2d 675, 679, 237 P.2d 734 (1951). In this older version of probation, which remains applicable to misdemeanants, a court may impose probationary conditions that bear a reasonable relation to the defendant's duty to make restitution or that tend to prevent the future commission of crimes. State v. Summers, 60 Wn.2d 702, 707, 375 P.2d 143 (1962).

State v. Williams, 97 Wn. App. 257, 263, 983 P.2d 687 (1999).

Probation is "motivated by many judicial hopes, among which are that the offender will mend his ways, make restitution and avoid not only repetition of his offense but the appearance thereof." State ex rel. Woodhouse v. Dore, 69 Wn.2d 64, 70, 416 P.2d 670 (1966). Notably absent from Washington case law

addressing conditions of probation for misdemeanants is the SRA's requirement that all conditions relate to the crime for which the offender was convicted. Indeed, as we have previously explained in Williams, conditions placed upon the suspension of a misdemeanant's sentence need not directly relate to the misdemeanant's crimes. 97 Wn. App. at 263.

Liam first asserts that a condition of probation is reasonable only when "there is some nexus between defendant, crime and preventing the defendant from committing future offenses." Such an assertion is contrary to our decision in Williams. As long as the conditions of probation are reasonably related to either reparation or rehabilitation, the failure of such conditions to relate directly to the crime of which a defendant is convicted is inconsequential. Williams, 97 Wn. App. at 263. See also Summers, 60 Wn.2d at 707. Liam's first contention—that a nexus is required between the crime of which he was convicted and the condition of probation—fails.

Liam next asserts that, on the record before the sentencing judge, no person could have reasonably believed that requiring Liam to undergo a sexual deviancy evaluation would reduce the likelihood that he would commit future crimes. This is so, Liam contends, because the jury did not find Liam guilty of any sex offenses or of any sexual motivation for non-sex offenses.[4] According to Liam, the jury's decision to acquit Liam of the sexual molestation charges

---

[4] Liam places great stock in the fact that the jury did not find that his assaults were sexually motivated. See RCW 9.94A.030(48) ("'Sexual motivation' means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification."). However, the record is clear that the jury was never presented with the option to find that Liam committed a sexually motivated assault in the fourth degree.

necessarily means that it concluded that Liam did not have any sexual contact with D.A.G. As a result, Liam reasons, the sentencing judge acted unreasonably by applying a condition that would tend to prevent the future commission of sex crimes. However, Liam's argument wrongfully conflates the State's burden of proof at trial with the sentencing judge's obligation to impose only reasonable conditions of probation upon misdemeanants.

The State was required to prove its charges of first degree child molestation beyond a reasonable doubt in order to obtain convictions on those charges. The jury found that the State did not meet its burden. The verdicts, however, do not necessarily mean that the record lacks evidence sufficient for a reasonable judge to conclude that requiring a sexual deviancy evaluation would tend to reduce the likelihood of Liam committing future crimes. Liam asserts that the jury's acquittal on the child molestation charges means that the jury necessarily concluded that he did not have sexual contact with D.A.G. and that it is therefore unreasonable to condition probation upon the completion of a sexual deviancy evaluation. However, conditions of probation, as a matter of "grace, privilege, or clemency," are left to the discretion of the judge, not the jury.[5] Williams, 97 Wn. App. at 263. The jury had to be convinced of Liam's guilt beyond a reasonable doubt to convict him, but the sentencing judge merely

---

[5] Furthermore, Liam's contention that the sentencing judge acted contrary to the jury's verdicts misapprehends that an acquittal does not necessarily mean that the jury concluded that no reasonable person could believe that a defendant committed the crime charged. Rather, it simply means that the jury concluded that the State failed to meet its burden to prove that the defendant committed the crime beyond a reasonable doubt. Indeed, the jury herein may well have believed it likely that Liam committed child molestation in the first degree while at the same time recognizing that the State had failed to establish such a belief beyond any reasonable doubt.

needed to reasonably conclude that the sexual deviancy evaluation would tend to reduce the likelihood that Liam would commit future crimes. See Summers, 60 Wn.2d at 707.

The record herein is replete with evidence sufficient to convince a reasonable judge that conditioning Liam's probation on the completion of a sexual deviancy evaluation would tend to reduce the likelihood that he would commit crimes in the future.[6] D.A.G. testified at trial, recalling instances in which Liam touched her inappropriately, specifically by pinching her butt and touching her vagina after either taking off her pants or by reaching inside of them. Although he initially insisted otherwise, Liam admitted to touching D.A.G.'s vagina during the recorded interviews with the police that were played during trial. Similarly, although he asserted that he never placed his hands down D.A.G.'s pants, he later confirmed that he had placed his hands down D.A.G.'s pants several times. Liam denied that any of this contact with D.A.G. was made for the purpose of sexual gratification,[7] but also admitted that he was having thoughts about placing his face down near her vagina. Given this evidence, we cannot say that no reasonable judge could conclude that undergoing a sexual deviancy evaluation and completing any recommended treatment might tend to prevent Liam from committing future crimes.

---

[6] The sentencing judge in this matter was also the presiding judge during Liam's trial and had the opportunity to observe all witness testimony.

[7] Instead, Liam contends that all contact occurred in the context of bathing or applying eczema medication or moisturizer to D.A.G.

9

Affirmed.

WE CONCUR: